In the Matter of the Application of ELIZA H. EASTERLY, as Surviving Trustee under the Will of JOHN M. EASTERLY, Deceased, Respondent, for Leave to Mortgage or Sell Part of the Trust Estate.

FREDERIC C. EASTERLY et al., Appellants.

Decedent's estate — when order directing sale of decedent's real property for payment of his debts is invalid.

The will of testator shows that it was his intention to exempt so far as possible certain of his real estate from the lien of his debts, which were to be paid from other property, a fund being provided for that purpose. Testator's widow, who is also surviving trustee under his will, is entitled to the income of the real estate in question with remainder over to the persons cited in this proceeding. On application of the trustee the court granted an order for the sale of part of such real estate for the payment of moneys alleged to be due her from the estate. *Held*, that the order of sale was in opposition to the express wish of the testator and contrary to the general scheme of the will. The estate in remainder was intended to be independent of the trust and it was the intention of the testator to protect such remainder and so restrict the trust and the powers of the trustee that the real estate in question should not be sold for his debts. The trust is solely for the benefit of testator's widow and wholly independent of the remainder devised subject to such trust. Hence, the sale was not authorized under section 105 of the Real Property Law.

*Matter of Lamoree*, 140 App. Div. 650, reversed.

(Argued June 1, 1911; decided October 3, 1911.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 28, 1910, which affirmed an order of Special

Term directing a sale of certain real property as therein provided.

The facts, so far as material, are stated in the opinion.

*Frederick E. Storke* for appellants. The Special Term had no power to make the order appealed from. (2 R. S. ch. 1, tit. 2, art. 2, § 65; *Morris* v. *Sickley,* 133 N. Y. 460; *McManus* v. *McManus,* 179 N. Y. 344; *Matter of Hoffman,* 201 N. Y. 255; *Ham* v. *Van Orden,* 84 N. Y. 27; *Matter of Asch,* 75 App. Div. 486; *Matter of Roe,* 119 N. Y. 509.) The order is not authorized by the statute under which it is made. (*Losey* v. *Stanley,* 147 N. Y. 560; *Campbell* v. *Stokes,* 143 N. Y. 29; *Matter of Seaman,* 147 N. Y. 24; *Moore* v. *Littel,* 41 N. Y. 80; *Powers* v. *Bergen,* 6 N. Y. 358; *Breevoort* v. *Grace,* 53 N. Y. 245; *Personeni* v. *Goodale,* 199 N. Y. 332; *Long* v. *Long,* 142 N. Y. 552; *Kingsland* v. *Murray,* 133 N. Y. 174; *Hogan* v. *Cavanaugh,* 138 N. Y. 422.)

*James Lyon* for respondent. The order is valid. The widow is not given the use of any part of testator's property. She was not entitled to the income directly, but was to receive the same by the hands of the executors and trustees. The duty of collecting the rents and meeting the other responsibilities imposed by this will rested upon them. Such a situation creates an express trust and vested the title to all of testator's property in said trustees. (*T. G. T. Co.* v. *C., B. & Q. R. R. Co.,* 123 N. Y. 37; *Tobias* v. *Ketchum,* 32 N. Y. 319; *Brewster* v. *Striker,* 2 N. Y. 19; *Leggett* v. *Perkins,* 2 N. Y. 297; *Morse* v. *Morse,* 85 N. Y. 53; *Craig* v. *Craig,* 3 Barb. Ch. 76; *Bradley* v. *Amidon,* 10 Paige, 235; *Vernon* v. *Vernon,* 53 N. Y. 351; *Vail* v. *Vail,* 7 Barb. 226; *Betts* v. *Betts,* 4 Abb. [N. C.] 317; *Mee* v. *Gordon,* 187 N. Y. 400; *Ward* v. *Ward,* 105 N. Y. 68.)

CHASE, J. John M. Easterly died November 30, 1895, leaving a will which was admitted to probate on the 11th

day of March, 1896, and letters testamentary were issued
to the executrix and executors named in said will, viz.:
Eliza H. Easterly, John J. Lamoree and Nathan C.
Reed. Nathan C. Reed was thereafter permitted to
resign his trust and he died in December, 1902. After
the commencement of this proceeding John J. Lamoree
died, leaving Eliza H. Easterly the sole surviving execu-
trix and trustee. By his will the testator recites that he
has provided in part for his wife by deeding to her cer-
tain real property and by the will he gives to her abso-
lutely all of his household goods and he therein further
provides: "I also give and grant unto her all moneys
due or to become due to my estate during her life except
as herein otherwise provided; the same to be paid to her
each month by my executors and trustees hereinafter
named without expense or anxiety to her." He further
provides by the third, fourth, fifth and sixth paragraphs
of his will as follows:

"*Third.* I give and bequeath to my brother Ozam M.
Easterly the sum of ten dollars per month, to commence
at my decease, to be paid to him monthly during his life
time. The same to be a charge on the expense fund
hereafter provided for.

"*Fourth.* To the end that my real estate owned by me
individually may be relieved from all liens by way of
mortgage or otherwise, and that all my debts may be
paid without recourse thereto, I have for about ten years
past carried a policy of five thousand dollars upon my own
life. To that end I hereby give, grant and devise the
proceeds of said policy and of my vacant lot No. 22 here-
after mentioned in trust to my executors for the express
purpose of having the same as speedily as possible col-
lected and paid in discharge of such liens and of my said
debts after my decease.

"*Fifth.* It is my will and I direct that one-half of all
moneys collected from rentals of my real estate, except
as hereinafter provided, be each month deposited by my

executors, in the Auburn Savings Bank of Auburn, N. Y., upon interest for the purpose of creating a fund from which to pay expenses of administration, costs of collections, taxes upon my property as they shall accrue and to meet all necessary charges for insurance, needed repairs, of any one or all of my buildings, sewerage, or any other charge made herein, so that they may be kept in proper renting condition and repaired if partially destroyed by fire, if my executors should deem it best to repair and if not sufficient money in this fund to rebuild if that should be necessary, my executors are authorized to sell the same and give good and sufficient deed or deeds for the same, the proceeds to be invested in first bond and mortgage on improved real estate and the income thereof paid to my wife. This fund is to be drawn upon to pay any deficiency for debts if necessary.

"The rentals of the Tallman purchase are hereby exempted from the above provision, and shall be applied to the payment of one-half of the mortgage held by savings bank hereafter mentioned. After the payment of said mortgage then the above provisions shall apply.

"*Sixth.* Being the owner as tenant in common in certain real estate at the corner of North and Water streets in the City of Auburn, including three several purchases known as the. 'Anderson purchase,' the 'Shields purchase' and the 'Tallman purchase,' I authorize and direct that my executors Nathan C. Reed and Eliza H. Easterly shall be the exclusive trustees of said property, and observe that relation in a manner so as to work no injustice to the other owner John J. Lamoree, or to my estate as the joint owners thereof.

"That a certain mortgage given by myself and John J. Lamoree to the Auburn Savings Bank, upon the Anderson purchase be as to my half of any unpaid balance, met and paid as in the past, by application of all rents, less taxes, insurance and repairs derived from the Tallman purchase till my half of said mortgage shall be fully paid."

It is also provided by the will that "If at any time my executors Nathan C. Reed and Eliza H. Easterly shall * * * desire to sell the property owned by me as tenant in common or some portion of the same and deem it to be the wisest thing to do I hereby authorize and empower them to make such sale to execute and deliver all necessary deeds to purchasers, to pay off my half of said mortgage and to invest the balance of the proceeds as before directed and pay the income to my wife during her lifetime." He therein directs his executors to sell two certain vacant lots owned by him and to use the proceeds of one of said lots for the payment of debts as far as the same is necessary, and the proceeds of the other of said lots to the erection of a monument upon his cemetery lot, and also certain head and foot stones, at a cost not to exceed $400, and that the surplus from the proceeds of said lot shall become a part of the fund for repairs. The remainder of his estate real and personal he devises and bequeaths by a provision in his will as follows, viz.:

"*Tenth.* After the death of my wife the remainder of my estate, both personal and real, of which I may die seized, which has not been sold by my executors under the powers given herein, and the proceeds of any property sold, shall be disposed of as follows:

"*First.* I give, devise and bequeath to the children of my sister Eliza Gleason that are living at the death of my wife, and if all are dead, then to their heirs, a third part. *Second.* I give, devise and bequeath to the children of my sister Hannah Jane Francisco that are living at the death of my wife, and if all are dead, then to their heirs, one third part. *Third.* I give, devise and bequeath to Frederick and J. M. Easterly, sons of my brother Ozam M. Easterly, and in case of the death of either then to their heirs, a third part. This last devise is subject to the payment of the annuity given to Ozam M. Easterly, my brother, if he shall be living as provided in second clause of my will."

Ozam M. Easterly died in 1900. At the time of the testator's death he was the owner of three double and six single dwelling houses, and the lands upon which they were erected on Easterly avenue and Easterly place in the city of Auburn; also an undivided one-half interest in four stores and the lands upon which the same were erected on North and Water streets in said city, and the two vacant lots referred to in his will; and also one other vacant lot.

The executrix and executors entered upon the discharge of their duties as such and sold said vacant lots and performed other duties as executors, and in 1898 had an accounting in the Surrogate's Court. By the decree in that proceeding it appears that they had received from the insurance policy, the sale of said vacant lots, and from the rents of the dwellings and stores, $13,714.89, and that they had paid for debts and interest thereon $6,777.14; taxes, insurance and repairs, $2,183.85; they had paid to Mrs. Easterly her one-half of rents of the dwellings, $2,208.69, and her one-half of rents of stores, $777.81; they had paid to Ozam M. Easterly the annuity amounting to $300, and to the widow $250, leaving a balance in their hands of $1,217.40. From the balance remaining in their hands they were entitled to deduct for commissions and expenses $397.83, leaving a net balance of $819.57.

After the accounting the executors proceeded as trustees in the execution of the trust. This proceeding was commenced in 1907, and it is alleged in the petition that since the accounting in 1898 Eliza H. Easterly has individually advanced $1,332.85 toward the necessary care and maintenance of said houses after first applying thereon one-half of the rent of said houses and stores as provided by the will, and that there is due to her on a note given by John M. Easterly in 1881 to her father, Joseph Hetzel, Sr., for $666 and now owned by her, the sum of $1,346.50 which with the alleged advancement on

account of the care and maintenance of said houses makes due to her the sum of $2,679.35, and the proceeding is brought for the purpose of authorizing and directing the sale of one of said houses and applying the proceeds of the sale to the payment to said Eliza M. Easterly of the balance alleged to be due to her as stated. An order was made, substantially as prayed for in the petition, for the sale of a tract of land therein described upon which is erected one of said houses. An appeal was taken from such order to the Appellate Division where the order was unanimously affirmed and an appeal is taken to this court. The appellants are adults and all of the residuary legatees and devisees under the said will. It is not claimed that the court is given express power by statute to direct a sale of the testator's real property for the payment of his debts after twelve or more years have elapsed since the testator's death and nine or more years from the final judicial settlement of the accounts of the executors.

A careful examination of the will shows that it was the intention of the testator to exempt so far as possible the Easterly avenue and Easterly place houses from the lien of his debts, and that by the will his debts were to be paid from the proceeds of other property. He provided a fund to consist of the proceeds of a life insurance policy and of one vacant lot to which it is to be assumed that he intended should be added the proceeds of all real property not specifically mentioned, and of all personal property other than that specifically given to his wife from which his debts were to be paid.

If the proceeds of such insurance policy and of other property, real and personal, had been kept in a separate fund, as provided by the will, and the testator's debts had been promptly paid therefrom, as also provided by the will, it seems reasonably clear from the record that the alleged indebtedness to Mrs. Easterly could have been paid therefrom. The will also provided for an expense

fund, consisting principally of one-half of the rents of the houses, to be deposited each month in the Auburn Savings Bank and used as in the will provided to pay "Expenses of administration, costs of collections, taxes upon my property as they shall accrue, and to meet all necessary charges for insurance, needed repairs, of any one or of all of my buildings, sewerage or any other charge made herein, so that they may be kept in proper renting condition." It is also provided that the fund is to be drawn upon to pay any deficiency for debts if any. From the will it appears that the testator intentionally refrained from giving the executors and trustees power to sell the Easterly avenue and Easterly place houses except in one contingency that has never arisen. There is no general power of sale in the will, so far as the real property described in the order in this proceeding is concerned. The order is not authorized by the will. It is in opposition to the express wish of the testator and contrary to the general scheme provided by him in his will. The order must stand, therefore, if at all, upon the authority of the statute hereinafter quoted.

It is provided by section 105 of the Real Property Law (Chap. 50 of the Consolidated Laws; formerly section 85, chap. 547, Laws of 1896, as amended by chapter 136, Laws of 1897, and chap. 311, Laws of 1898, and also Revised Statutes, part 2, chap. 1, title 2, section 65, as last amended by chapter 886, Laws of 1895) as follows: "If the trust is expressed in the instrument creating the estate, every sale, conveyance or other act of the trustee, in contravention of the trust, except as provided in this section, shall be absolutely void. The Supreme Court may, by order, on such terms and conditions as seem just and proper, authorize any such trustee to mortgage or sell such real property, or any part thereof, whenever it appears to the satisfaction of the court that said real property, or some portion thereof, has become so unproductive that it is for the best interest of such estate or

that it is necessary or for the benefit of the estate to raise funds for the purpose of preserving it by paying off incumbrances or of improving it by erecting buildings or making other improvements, or that for other peculiar reasons, or on account of other peculiar circumstances, it is for the best interest of said estate. * * *."

The trust estate created by the will of the testator will end with the death of Mrs. Easterly. Upon her death the property becomes vested in certain persons, the descendants of the sisters and brother of the testator constituting classes as stated in the will. The appellants, who are the persons constituting such classes as they now exist, are vested with the fee of the real property described in the order in this proceeding subject to the trust and subject to being divested or of their interest being changed by the death of one of their number or of the birth of a person or persons who will become one of the classes specified in the will. (Real Property Law, section 40; *Losey* v. *Stanley*, 147 N. Y. 560, 571; *Moore* v. *Littel*, 41 N. Y. 66; *Doscher* v. *Wyckoff*, 132 App. Div. 139; *Stringer* v. *Young*, 191 N. Y. 157; *Stevenson* v. *Lesley*, 70 N. Y. 512.) The trust as such is solely for the benefit of Mrs. Easterly, and it is wholly independent of the remainder devised subject to such trust. The statute from which we have quoted deals with the trust estate only, and an order for a sale pursuant to the statute should not purport to convey the independent vested estate in the remaindermen.

This court in *Losey* v. *Stanley* (*supra*) fully considered the power of the court under the statute as it then existed and while construing a will very similar in its terms to the will of the testator in this case. The addition to the statute by the amendment in 1896 of the words " except as provided in this section " qualifies the statute so far as it relates to a sale of real property in contravention of the trust, but in no way extends the power of sale to an interest in the real property that is independent of the

trust. While the opinion in the *Losey* v. *Stanley* case shows that for certain reasons specified perhaps the money received upon the mortgage pursuant to the alleged authority of the order in that case should not in equity be paid by the remaindermen or by the estate of the remaindermen in the property theretofore held in trust, the decision was much broader than indicated by the opinion of the court in this case in the Appellate Division. It was in that case expressly held that " The estate to which the section refers is the trust estate, that is, the estate held under the trust. It did not in the nature of things comprehend legal estates in remainder in the same land taking effect on the termination of the trust. * * * An attempted sale or conveyance by the trustee of the estates in remainder would, doubtless, be ineffectual, but this would be so for the reason that the trustees would have no estate in remainder to sell or convey, and not because such sale or conveyance would be in contravention of the trust. * * * If the construction claimed be sustained it would authorize the court to order the sale or mortgage of the estates in remainder of adults without their consent, for the purposes specified, which would be plainly unconstitutional." (p. 571.)

The persons cited in this proceeding are the owners of the estate in remainder and they have by answer in the proceeding and by consistent protest and argument in all the courts objected to the sale proposed by the order in this proceeding. Their position has the approval of the courts in many cases. The decision in *Losey* v. *Stanley* has been frequently referred to in this court with approval and the essential part of the decision in that case is stated in the words that we have quoted from the opinion therein. The decision in that case is not dependent upon any peculiar facts therein disclosed, but it has been generally recognized as an authoritative decision of this court construing the statute in all cases where the trust and the remainder after the termination of the trust are

independent, legal estates. The estate in remainder in this case was intended to be independent of the trust and it was as we have already seen the intention of the testator to protect such remainder and so restrict the trust and the powers of the executor and the trustee under the trust that the houses and lots on Easterly avenue and Easterly place should not be sold for debt, and it was also his intention by defining the amount applicable to the expense fund to protect his wife, the beneficiary under the trust, and the remaindermen who take subject to the trust.

We think that the order was without authority under the will, or by statute. It should be reversed and the proceeding dismissed, with costs in all courts.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER, WILLARD BARTLETT and COLLIN, JJ., concur.

Order reversed, etc.