ANDERSON, COLLECTOR OF INTERNAL REVENUE, *v.* WILSON ET AL., EXECUTORS *

No. 460.   Argued February 8, 9, 1933.—Decided March 13, 1933

---

* Together with No. 461, *Wilson et al., Executors,* v. *Anderson, Collector of Internal Revenue.*

*Assistant Attorney General Rugg,* with whom *Solicitor General Thacher, Assistant Attorney General Youngquist, Miss Helen R. Carloss,* and *Messrs. Sewall Key* and *Erwin N. Griswold* were on the brief, for Anderson, Collector.

*Mr. George E. Cleary,* with whom *Mr. Clark T. Brown* was on the brief, for Wilson et al., Executors.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The question to be decided is whether the difference between the value of real estate at the death of a testator and the proceeds realized thereafter upon a sale by the trustees may be deducted as a loss by the taxpayer, the beneficial owner of the proceeds, upon his return to the collector for the income of the year.

Richard T. Wilson, Sr., a resident of New York, died in November, 1910, the owner of a large estate. By the fourth article of his will he directed his executors to sell and convert into personalty his entire residuary estate, and to divide the proceeds thereof into five equal parts. Out of the fifth part set aside for the use of his son, Richard T. Wilson, Jr., the sum of $500,000 was to be held for the use of the son during life with remainder to lineal descendants, and in default of such descendants to others. "The balance of such part I give to my said son, Richard T. Wilson, Jr., to be his absolutely."

This gift, if it had stood alone, might have seemed to allow to the executors no discretion as to the time of sale, and might have bred uncertainty as to their powers and duties before the time for distribution. The next or fifth article clarifies the meaning. The testator there recalls the fact that after setting up the trust for $500,000 and

other special funds, a large part of his residuary estate will consist of real estate in New York and other states, and shares of manufacturing and business corporations, " which should not be sold excepting under favorable conditions." Accordingly he lays upon his executors the following command: " to hold and manage such remaining portion of my residuary estate until in their judgment it can from time to time be advantageously sold and disposed of, not exceeding, however, a period longer than the lives of my sons Marshall Orme Wilson and Richard T. Wilson, Jr., and the survivor of them, and I hereby authorize and empower my said executors within said period to sell, convey, assign and transfer the same, or any part thereof, at such time or times as they may deem for the best interests of my estate, and upon such terms and conditions as they may deem proper, including the terms and mode of payment thereof." Nor is this all. The executors are authorized in their discretion to organize a corporation, to convey to it the whole or any part of the residuary estate in return for the capital stock, and to hold the stock " until it can in their judgment be advantageously disposed of." Finally there is a provision that upon the making of a sale, the executors in their discretion may distribute the proceeds, " or retain the same, or any part thereof for further conversion before distribution, not, however, beyond the period of the lives of my said sons and the survivor of them." Until the time of distribution the net income is to be paid semi-annually to those entitled to receive it.

Included in the real estate at the death of the testator was a building in the City of New York known as the " Commercial Building," of a value at that time of $290,000. This building the executors held till 1922, when they sold it for $165,000. After allowance for depreciation, the loss to the estate by reason of this sale was $113,300. The executors were at liberty to distribute the entire pro-

ceeds ($165,000) among the residuary legatees if their judgment moved them to that course. They did not do so. They distributed only $50,000, and held the balance in the trust. One fifth of the part distributed belonged and was paid to Richard T. Wilson, Jr. One fifth of the part retained was held for his use as it had been before the sale.

The present controversy grows out of a tax return of income for 1922. From the gross income of that year the taxpayer, Richard T. Wilson, Jr., deducted $25,001.17, one-fifth, according to his computation, of the loss resulting from the sale. It was afterwards agreed that one-fifth of the loss was not more than $22,660, and that the amount of the claimed deduction should be corrected accordingly. The Commissioner disallowed the loss altogether, and assessed an additional tax. The taxpayer upon payment of the tax filed a claim for refund which the Commissioner rejected. This suit was then brought to recover the amount paid upon the additional assessment. During the pendency of the suit the taxpayer died, and his executors were substituted. The District Court gave judgment in their favor, holding that one-fifth of the loss upon the sale of the Commercial Building was a loss suffered by the taxpayer, the beneficiary of the trust, and was a proper deduction from his income for the year of sale. Upon an appeal by the Government, the Court of Appeals for the Second Circuit sustained the representatives of the taxpayer in their claim for a deduction, but reduced the amount. In the view of that court the loss allowable to the beneficiary was not one-fifth of the entire loss that had been suffered by the trust estate, but only that part of one-fifth of the total loss represented by the ratio between the part of the proceeds presently distributed (not more than $50,000), and $165,000, the entire proceeds of the sale. The record left room for some uncertainty whether the payment of $50,000 had

been derived altogether from a sale of the Commercial Building, or in part from other sources. To the end that this uncertainty might be removed, the judgment of the District Court was reversed, and the cause remanded for retrial in accordance with the opinion. · 60 F. (2d) 52. Cross-petitions for certiorari, allowed by this court, have brought the controversy here. In No. 460, the Government complains that there was error in the refusal to disallow the deduction altogether. In No. 461, the representatives of the taxpayer complain that there was error to their prejudice in restricting the amount.

To determine whether the loss was one suffered by the trust estate, or one suffered by the taxpayer to whom the proceeds of the sale were payable, there is need at the outset to determine the meaning of the will. The Government contends, and so the courts below have held, that title to the realty was given to the executors upon a valid trust to sell and to apply the rents and profits in the interval. ꞏ The representatives of the taxpayer contend that the executors had no title, but only a power in trust, and that subject to the execution of that power, the taxpayer was owner. If that be so, the loss was his and no one else's. A mere donee of a power is not the owner of an estate, nor to be classed as a juristic entity to which a loss can be attributed. We think, however, that what passed to the executors was ownership or title. True the will does not say in so many words that the residuary estate is given or devised to them, but the absence of such words is of no controlling significance when a gift or devise is the appropriate and normal medium for the attainment of purposes explicitly declared. *Robert v. Corning*, 89 N.Y. 225, 237; *Vernon v. Vernon*, 53 N.Y. 351, 359; *Tobias v. Ketchum*, 32 N.Y. 319; *Brewster v. Striker*, 2 N.Y. 19. Nothing less than ownership will supply that medium here. The executors are charged

with active and continuing duties not susceptible of fulfilment without possession and dominion. They are to collect the income and pay it over in semi-annual instalments after deducting the expenses. They are to "hold and manage" the estate with full discretionary powers. They are even at liberty to convey it to a corporation if they believe that efficient administration will thereby be promoted. Under reiterated judgments of the highest court of New York they are more than the donees of a power. They are the repositories of title. *Morse* v. *Morse*, 85 N.Y. 53; *Robert* v. *Corning, supra; Ward* v. *Ward*, 105 N.Y. 68; 11 N.E. 373; *Mee* v. *Gordon*, 187 N.Y. 400; 80 N.E. 353; *Putnam* v. *Lincoln Safe Deposit Co.*, 191 N.Y. 166, 182; 83 N.E. 789; *Striker* v. *Daly,* 223 N.Y. 468, 472; 119 N.E. 882.

Another question of construction has yet to be considered. We have seen that the effect of the will was to clothe the executors with title to the land. We have yet to determine whether the title that came to them was the fee or something less. If it was the fee, the whole estate was in them, and no one else had any ownership or interest in the land as distinguished from ownership or interest in the proceeds of a sale. *Delafield* v. *Barlow*, 107 N.Y. 535; 14 N.E. 498; *Salisbury* v. *Slade*, 160 N.Y. 278, 290; 54 N.E. 741; *Weintraub* v. *Siegel*, 133 App. Div. (N.Y.) 677, 681; 118 N.Y.S. 261. If it was less than the fee, there may have vested in others upon the death of the testator a future estate in remainder, which would take effect in possession on the termination of the trust. *Losey* v. *Stanley*, 147 N.Y. 560, 568; 42 N.E. 8; *Stevenson* v. *Lesley*, 70 N.Y. 512; *Matter of Easterly*, 202 N.Y. 466, 474; 96 N.E. 122. Under the law of New York what passed to these executors was the title to the fee. By the will of this testator all his property, real and personal (with exceptions not now material) was to be

converted into money. The five sons and daughters among whom the money was to be divided had no interest in the land, aside from a right in equity to compel the performance of the trust. Real Property Law of New York, § 100; *Schenck* v. *Barnes,* 156 N.Y. 316, 321; 50 N.E. 967; *Melenky* v. *Melen,* 233 N.Y. 19, 23; 134 N.E. 822. What was given to them was the money forthcoming from a sale. *Delafield* v. *Barlow, Salisbury* v. *Slade, Weintraub* v. *Siegel, supra.* Their interest in the corpus was that and nothing more.

Our answer to the inquiry as to the meaning of the will comes close to being an answer to the inquiry as to the incidence of the loss. The taxpayer has received the only legacy bequeathed to him, and received it as it was given without the abatement of a dollar. What was bequeathed was an interest in a fund to be made up when the trustees were of opinion that it would be advisable to sell. This alone was given, and this has been received. There has been no loss by the taxpayer of anything that belonged to him before the hour of the sale, for nothing was ever his until the sale had been made and the fund thereby created. A shrinkage of values between the creation of the power of sale and its discretionary exercise is a loss to the trust, which may be allowable as a deduction upon a return by the trustees. It is not a loss to a legatee who has received his legacy in full. One might as well say that a legatee of shares of stock to be bought by executors out of the moneys of the estate would have an allowance of a loss upon a showing that the value would have been greater if the executors in the exercise of their discretion had bought sooner than they did. The legatee must take the legacy as the testator has bequeathed it.

We hold that the trust, and not the taxpayer, has suffered the loss resulting from the sale of the Commercial

Building, and it follows that where loss has not been suffered, there is none to be allowed. Whether the result would be the same if the beneficiaries had been the owner of future estates in remainder, we are not required to determine. Cf. *Francis* v. *Commissioner,* 15 B.T.A. 1332, 1340. Our ruling will be kept within the limits of the case before us. In so ruling we do not forget that the trust is an abstraction, and that the economic pinch is felt by men of flesh and blood. Even so, the law has seen fit to deal with this abstraction for income tax purposes as a separate existence, making its own return under the hand of the fiduciary and claiming and receiving its own appropriate deductions. The Revenue Act of 1921 under which the tax in question was imposed defines the word " taxpayer " as including a trust or an estate. Revenue Act of 1921, c. 136; 42 Stat. 227, § 2 (9). The definition is pursued to its logical conclusion in a long series of decisions. *Baltzell* v. *Mitchell,* 3 F. (2d) 428; *Whitcomb* v. *Blair,* 58 App.D.C. 104; 25 F. (2d) 528; *Abell* v. *Tait,* 30 F. (2d) 54; *Busch* v. *Commissioner,* 50 F. (2d) 800, 801; *Roxburghe* v. *Burnet,* 61 App.D.C. 141; 58 F. (2d) 693; cf. *Merchants Loan & Trust Co.* v. *Smietanka,* 255 U.S. 509. These and other cases bear witness to the rule that an equitable life tenant may not receive a deduction for the loss of capital assets of the trust, though the result of such a loss is a reduction of his income. The argument will not hold that what was lost to this taxpayer was not the capital of the trust, but rather his own capital, withdrawn from his possession, but held for his account by the executors as custodians or bailiffs. His capital was in the proceeds, to the extent that they were distributed, and never in the land. We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We take the statute as we find it.

The Circuit Court of Appeals did not err in reversing the judgment of the District Court. It did err in its instructions as to the relief upon a second trial.

The judgment of reversal is accordingly affirmed, and the cause remanded to the District Court with instructions that a judgment should be entered dismissing the complaint. *Affirmed.*