## NEW YORK TRUST CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 119.

Circuit Court of Appeals, Second Circuit.
Dec. 18, 1933.

See, also, 54 F.(2d) 463.

White & Case, of New York City (J. Du Pratt White, Joseph M. Hartfield, Russell D. Morrill, and A. C. Newlin, all of New York City, of counsel), for petitioner.

Helen R. Carloss and Sewall Key, both of Washington, D. C., for respondent.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

One, Matthiessen, in order to make a settlement for his son, transferred six thousand shares of stock to the petitioner in trust to accumulate the income and pay the accumulations to the son when he became twenty-one, thereafter to pay him the income yearly until he became twenty-five, and at that time to transfer the shares to him. If the son died under twenty-five, the trustee was to transfer the shares to two other sons, share and share alike. Matthiessen bought the shares in 1906, for $141,375; when he transferred them to the trustee, on December 24, 1921, they were worth $577,600. The petitioner by virtue of its powers under the deed sold the shares in 1922 for $603,832. The questions arising are two; whether in estimating the "basis" upon which to calculate profits, the date of Matthiessen's purchase should be taken, or the date of the settlement; and whether, in case the first is the proper date, the tax is limited to twelve and a half per cent. under section 206 (a) (6) and section 206 (b) of the Revenue Act of 1921 (42 Stat. 232). The Board held against the petitioner upon both points.

Section 202 (a) (2) of the act (42 Stat. 229) provided that when property was "acquired by gift," the "basis" in estimating profits was to be the cost or value when the donor acquired it. This was held constitutional in Taft v. Bowers, 278 U. S. 470, 49 S. Ct. 199, 73 L. Ed. 460, 64 A. L. R. 362, and as the settlement was made after the act of 1921 was passed, the only question is as to the meaning of the statute. Was the transfer a "gift"? It was certainly not a "purchase," except in the archaic sense that all transfers of land, not by descent, were purchases. Colloquially perhaps, it was a gift to the son, who alone got the benefit. Even so, it was nevertheless a gift; the transaction as a whole could not be less, though the trustee's part in it were regarded as only instrumental. Verbally all the conditions specified in section 202 (a) (2) existed; there was a gift and a donor, all that the section required. Again, its underlying purpose was to reach the appreciation which occurred in the hands of the donor, and which could not be taxed in any other way, for he had not "realized" it. That purpose demanded that such a transaction as this be included. So it seems to us immaterial upon whom the tax impinged; upon the trustee, the beneficiary, or the "trust," though we do not read Anderson v. Wilson, 289 U. S. 20, 53 S. Ct. 417, 77 L. Ed. 1004, as holding that a new entity has been conceived to bear taxation. Section 219 of the act (42 Stat. 246) imposes the burden either upon the trustee or the beneficiary, never upon the trust; so far as we can see, it speaks in the customary tongue. There was much more to be said for the taxpayer in Burnet v. Guggenheim, 288 U. S. 280, 53 S. Ct. 369, 77 L. Ed. 748, where the cancellation of a power to revoke was held to be a "transfer by gift." That ruling could not have been made if

trust settlements were not gifts; the settlor had transferred the property to a trustee, and the cancellation did no more than make absolute the trustee's title and the beneficiaries' interests. Finally, it is of no moment that in 1924 Congress amended the law by an express provision including "transfers in trust." Section 204 (a) (3), Revenue Act 1924, 26 US CA § 935 (a) (3) and note. If any inference from this is justified at all, it is rather that the amendment was a definition of earlier purpose than a new enactment. The Board was plainly right on the first point.

More is to be said for the taxpayer on the second, in spite of the fact that two circuits have ruled against him already. Johnson v. Commissioner, 52 F.(2d) 726 (C. C. A. 3); Shoenberg v. Burnet, 60 App. D. C. 381, 55 F.(2d) 543. True, the trustee, the taxpayer, did not "hold" the property for two years in the usual sense. Moreover, it must be owned that section 206 (c) Revenue Act 1921 (42 Stat. 232), is a statute of exemption, and that as such doubts must be resolved against the taxpayer. Hoge v. R. R. Co., 99 U. S. 348, 355, 25 L. Ed. 303; Bank of Commerce v. Tennessee, 161 U. S. 134, 146, 16 S. Ct. 456, 40 L. Ed. 645; Heiner v. Colonial Trust Co., 275 U. S. 232, 235, 48 S. Ct. 65, 72 L. Ed. 256; Insurance, etc., Co. v. Commissioner, 36 F.(2d) 842 (C. C. A. 2). Yet the result seems to us an extremely improbable one for Congress to have intended; it could hardly have survived direct scrutiny, had that been given it; it did not indeed survive after 1926. Section 208 (a) (8), Revenue Act 1926, 26 USCA § 939 note. The upshot of the two sections, read as the Board reads them, is to treat the donee, for the purpose of computing his income, as holding the property during the period of the donor's tenure; but for the purpose of finding the rate at which that very income is to be taxed, as holding it only from the time when he gets it. The periods are tacked to establish his "capital assets," and divorced to tax them; he gets all the burdens and none of the benefits; and while it is of course theoretically possible that Congress meant to do this, it is hardly more. We do not think that we do too much violence to the word by so declaring. Though the donee has not literally "held" the property for two years, he is treated as though he had; his acceptance of the gift is regarded as a vicarious substitution of himself for the donor. Only so, can he become subject to a tax upon the whole appreciation "realized" by his sale, part of which is otherwise wholly foreign to him. All we have to do is to carry over that substitution into section 206 (a) (6); that is, to read the two sections together. In so doing we merely carry forward and make comprehensive the purpose of section 206 (c) itself, which was to avoid the "freezing" of property because of high surtaxes. Report of Ways & Means Com. on House Rep. 8425, House Rep. 350, 67th Congress, First Session, p. 10. The classic instance of such a treatment of a statute is Holy Trinity Church v. United States, 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226. We do not forget that courts must not make law, but only declare it; but there is no vade mecum to guide us between a sterile literalism which loses sight of the forest for the trees, and a proper scruple against imputing meanings for which the words give no warrant. That there comes a point at which we must be content to treat the purpose as ineffectively expressed, we readily agree, though no one can fix it a priori. But that does not absolve us in a given case, and here we find no sufficient obstacle in the language used; rather we think the generative purpose can infuse it.

Order reversed; deficiency to be taxed upon the income as determined below, but at the rate prescribed by section 206 (c) of the Revenue Act of 1921.

MANTON, Circuit Judge, dissenting in opinion.

MANTON, Circuit Judge (dissenting).

I dissent from that part of the opinion which accords to the appellant the benefits of section 206 (a) (6) and 206 (b) of the Revenue Act 1921. The conclusion reached is that, if the basis for determining the gain from the sale of stock is the cost to the donor, the appellant should be classified as one acquiring and holding for profit or investment, for more than two years the trust res and therefore entitled to be taxed on the capital net gain under the provisions of section 206 (b). But, however desirable it might be to grant relief to the taxpayer, still the statute requires the property to be held by it for more than two years. The trust is the taxpayer, and it had not held the property for more than two years. Anderson v. Wilson, 289 U. S. 20, 53 S. Ct. 417, 77 L. Ed. 1004. This statute is so clear in its terms that there is no room for interpretation, and the courts may not create a new statute by interpretation. Caminetti v. United States, 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; Hyde v. Shine, 199 U. S. 62, 78, 25 S. Ct. 760, 50 L. Ed. 90; Lake County v. Rollins, 130 U. S.

662, 670, 9 S. Ct. 651, 32 L. Ed. 1060; Ruggles v. Illinois, 108 U. S. 526, 2 S. Ct. 832, 27 L. Ed. 812.

As stated in the prevailing opinion, a different result was reached in Shoenberg v. Burnet, 60 App. D. C. 381, 55 F.(2d) 543, and Johnson v. Commissioner, 52 F.(2d) 726 (C. C. A. 3). No regulation of the collector has been made to the contrary to this construction of the statute. See article 1651, Reg. 62, 65. This administrative interpretation has the force and effect of law in view of the fact that Congress included the same definition of capital assets in the Revenue Act of 1924, § 208 (26 USCA § 939 note).

Moreover, the change in the law by section 208 of the Revenue Act of 1926 (44 Stat. 9, 19, 20 [26 USCA § 939 note]), which gave the donee the right to add the period during which the property was held by the donor to the period of his ownership in measuring the two-year period, was not declaratory of existing law. It was a desire on the part of Congress to change the law. United States v. Magnolia Petroleum Co., 276 U. S. 160, 48 S. Ct. 236, 72 L. Ed. 509. See House Reports No. 1, 69th Congress, 1st Session, by Committee of Ways and Means, pp. 6, 7. Congress could have had no purpose in enacting existing regulations into the law. It was not engaged in clarifying, but rather in changing, the law. The order should be affirmed.