LEVINE, J.
 

 The issue presented in this appeal is whether the trial court erred in quashing a civil investigative subpoena duces tecum issued by the Office of the Attorney General and served on appellee Shapiro & Fishman, LLP, a law firm. We find the trial court did not err since the Attorney General’s investigative subpoena, issued exclusively under the statutory authority of Florida’s Deceptive and Unfair Trade Practices Act (FDUTPA), sections 501.201-.213, Florida Statutes, was issued to investigate actions of the appellee law firm not covered under the rubric of “trade or commerce” as clearly required by this statute. Since we find the Attorney General failed to establish that the object of the civil subpoena was connected to “trade or commerce,” we need not address the other issues raised by the appellant, and we affirm.
 
 [1]
 

 On August 6, 2010, the Office of the Attorney General issued a civil investigative subpoena to Shapiro & Fishman, a law firm which provides legal services in foreclosure cases. The subpoena sought production of documents related to thirteen different subjects involving the law firm’s representation of lending institutions in foreclosure cases. The subpoena sought information on any corporations, companies, partnerships, or associations in which the law firm and the named partners had any interest. It also asked for the names of all servicing companies the firm had represented in the past five years; all nondisclosure agreements the firm executed in the past five years with employees, subcontractors, and independent contractors; copies of checks or evidence of other payment from plaintiffs represented in foreclosure cases by the firm; and documents on the amount paid to the firm’s employees, subcontractors, and independent contractors for completion of foreclosure cases within a certain time period.
 

 
 *355
 
 The subpoena clearly indicated that the Attorney General relied exclusively on the statutory authority of FDUTPA. The subpoena stated, in pertinent part, as follows: “The general purpose and scope of this investigation extends to possible unfair and deceptive trade practices which involve the advertising and marketing practices of the above named recipient [the Shapiro Firm].” Nowhere in the subpoena, however, did the Attorney General include a specific request for information related to the law firm’s advertising or marketing practices.
 

 The law firm filed a petition to quash the subpoena. The Attorney General filed a response to the motion to quash and alleged that the subpoena was, in fact, a response to complaints alleging that the law firm had been fabricating or presenting false or misleading documents for utilization in foreclosure cases.
 
 [2]
 
 The trial court held a hearing and quashed the subpoena for several reasons, including that the Attorney General did not have the authority to subpoena the law firm under the FDUTPA statute. This appeal of the trial court’s quashing of the subpoena ensues.
 
 [3]
 

 We review this issue on appeal de novo.
 
 See Murray v. Manner Health,
 
 994 So.2d 1051, 1056 (Fla.2008) (“Statutory interpretation is a question of law subject to de novo review.”);
 
 Armstrong v. Harris,
 
 773 So.2d 7, 11 (Fla.2000) (providing that “the standard of review for a pure question of law is de novo”).
 

 The Office of the Attorney General issued a civil investigative subpoena pursuant to section 501.206, Florida Statutes, a part of FDUTPA. FDUTPA was designed in part to “protect the consuming public and legitimate- business enterprises from those who engage in unfair methods of competition, or .unconscionable, deceptive, or unfair acts. or practices in the conduct of any trade or commerce.” § 501.202(2), Fla. Stat.
 

 The term “trade or commerce” is specifically defined in section 501.203(8) of the act:
 

 “Trade or commerce” means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or -otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. “Trade or commerce” shall include the conduct of any trade or eotomerce, however denominated, including any nonprofit or not-for-profit person or activity.
 

 In Florida, two federal courts have addressed issues similar to the case at bar. In
 
 Trent v. Mortgage Electronic Registration Systems, Inc.,
 
 618 F.Supp.2d 1356 (M.D.Fla.2007), a class action suit was initiated by mortgage borrowers against the successor to the original lender, based on the successor’s actions in foreclosing on mortgages. The borrowers alleged that the successor to the original lenders violated FDUTPA by engaging in the unlicensed practice of law and by using deceptive means to collect debts on residential mortgage loans.
 

 The district court found that the successors did not, in fact, engage in “unfair” and
 
 *356
 
 “deceptive” acts. However, the district court stated:
 

 Even assuming arguendo the facts as pled establish that MERS engaged in deceptive acts or unfair trade practices, MERS’ actions do not qualify as “trade or commerce” under the Act.... The Court agrees with MERS that under the plain language of the statute, MERS did not “advertise, solicit, provide, offer or distribute” anything.
 

 Id.
 
 at 1365 n. 12. The district court concluded:
 

 What MERS did is obtain a legal interest in a note from third party lenders (becoming the “holder” of the note so that it could lawfully foreclose) and then proceeded to foreclosure. That MERS communicated pre-suit with plaintiffs that it was a “creditor” or “owned” the debt does not fall within the purview of “trade or commerce.”
 

 Id.
 

 In
 
 Kelly v. Palmer, Reifler, & Associates, P.A.,
 
 681 F.Supp.2d 1356 (S.D.Fla. 2010), individuals who received civil theft demand letters -from a law firm, threatening to file a lawsuit if payments were not made, filed a class action suit against the law firm alleging, among various claims, a violation of FDUTPA by that law firm. The district court granted summary judgment for the law firm on claims of FDUT-PA violations, concluding that the plaintiffs did not satisfy the “ ‘trade or commerce’ element of FDUTPA.”
 
 Id.
 
 at 1374. The
 
 Kelly
 
 court concluded:
 

 [W]e do not agree with Plaintiffs that the Palmer Law Firm’s pursuit of civil theft remedies ... falls within the meaning of “trade or commerce” such that the firm could be subject to liability under FDUTPA. While it has some initial appeal, we do not find that the firm’s offer to settle and release claims for money constitutes soliciting and offering to Plaintiffs a “thing of value” under the act.
 

 Id.
 
 at 1375. “The Palmer Law Firm’s acts-conduct ostensibly occurring during the exercise of a legal remedy-had zero connection whatsoever to any ‘trade or commerce.’ ”
 
 Id
 

 We are persuaded by the
 
 Trent
 
 and
 
 Kelly
 
 cases to find that the alleged conduct of the law firm in the present case does not fall within the rubric of “trade or commerce” as required for civil investigative subpoenas under FDUTPA. The Office of the Attorney General’s subpoena centers on the law firm’s conduct in the processing of foreclosure cases, as opposed to the initial applications for mortgages or the initial lending relationships, which would be more akin to traditional notions of “trade or commerce” as defined by the FDUTPA statute.
 

 Courts from other jurisdictions have concluded that alleged actions similar to those in the present case would not constitute “trade or commerce” under equivalent consumer protection statutes, which are similar to FDUTPA.
 
 See Dalesandro v. Longs Drug Stores Cal., Inc.,
 
 383 F.Supp.2d 1244, 1250-51 (D.Haw.2005) (concluding that a pharmacy owner was not engaged in “trade or commerce” when it refused to provide a customer complete copy of records, where the refusal was “in the context of settlement and preparation for litigation, which is distinct from a ‘business context’ ”);
 
 Begelfer v. Najarian,
 
 381 Mass. 177, 409 N.E.2d 167, 176 (1980) (finding that “defendants’ pursuit of their contractual and legal remedies” was not engaging in “trade or commerce,” and the demand for payment under a note did not constitute an “unfair or deceptive act”).
 

 At oral argument, the Attorney General conceded it had decided to proceed exclusively under this one particular statutory
 
 *357
 
 provision. It could have proceeded under another statutory provision, such as a criminal investigative subpoena if other relevant criteria were satisfied, which would not require the subpoena to qualify as connected to “trade or commerce” under FDUTPA. This was exclusively the choice of the state.
 

 We find that the trial court did not err in quashing the civil investigative subpoena since the information sought under this subpoena had no connection or nexus to “trade or commerce,” which is a key component of the FDUTPA statute. The Attorney General argued at the hearing before the trial court that this particular subpoena could be utilized since it was merely “gathering evidence.” Although that is unquestionably true for all investigative subpoenas, there still has to be statutory basis for the issuance of a subpoena that is moored to a particular statute, that being FDUTPA in this case.
 

 We are compelled to require that the subpoena issued pursuant to a specific statute be connected to that particular statute. As Justice Cardozo once wrote: ‘We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We take the statute as we find it.”
 
 Anderson v. Wilson,
 
 289 U.S. 20, 27, 53 S.Ct. 417, 77 L.Ed. 1004 (1933). Similarly, we take FDUTPA as we find it, and we affirm the trial court’s order to quash the subpoena.
 

 Affirmed.
 

 WARNER and HAZOURI, JJ., concur.
 

 [1]
 

 . The Office of the Attorney General does not challenge the trial court's determination that the investigative subpoena was overbroad, vague, and unduly burdensome. Instead, it challenges the trial court’s other determination that the Office of the Attorney General lacks authority to issue the civil investigative subpoena pursuant to FDUTPA, so it can withdraw the subpoena and issue a new subpoena "more narrowly tailored than the original.”
 

 [2]
 

 . At the hearing, counsel for the Attorney General conceded that the "front of the subpoena does misstate the purpose of the investigation.”
 

 [3]
 

 . This case was originally filed as a petition for writ of certiorari, but we have re-designated it ás a final appeal since the trial court's ruling disposed of the entire pending matter.
 
 See
 
 Fla. R.App. P. 9.040(c);
 
 Transcall Am., Inc. v. Butterworth,
 
 604 So.2d 1253 (Fla. 1st DCA 1992).