IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-1072

Filed 7 November 2023

Wake County, Nos. 21 CVS 3292, 3457

N.C. DEPARTMENT OF ENVIRONMENTAL QUALITY, DIVISION OF WATER RESOURCES, Petitioner,

v.

N.C. FARM BUREAU FEDERATION, INC., Respondent.

---

NORTH CAROLINA ENVIRONMENTAL JUSTICE NETWORK AND NORTH CAROLINA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, Petitioners,

v.

N.C. FARM BUREAU FEDERATION, INC.,

and

N.C. DEPARTMENT OF ENVIRONMENTAL QUALITY, DIVISION OF WATER RESOURCES, Respondents.

Appeal by Respondent from order entered 20 June 2022 by Judge Mark A. Sternlicht in Wake County Superior Court. Heard in the Court of Appeals 6 September 2023.

> *North Carolina Farm Bureau Legal Foundation, Inc.*, *by Phillip Jacob Parker, Jr., Steven A. Woodson, & Stacy Revels Sereno, for Respondent-Appellant.*
>
> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Marc Bernstein & Assistant Attorney General Taylor Hampton Crabtree, for Petitioner-Appellee.*

*Southern Environmental Law Center, by Julia F. Youngman, Blakely E. Hildebrand, & Iritha Jasmine Washington, for Appellee-NC Environmental Justice Network, et al.*

*Irving Joyner, for Appellee-NC Environmental Justice Network, et al.*

*Lawyers Committee For Civil Rights Under Law, by Edward Caspar, admitted pro hac vice, & Sophia E. Jayanty, admitted pro hac vice, for Appellee-NC Environmental Justice Network, et al.*

CARPENTER, Judge.

The North Carolina Farm Bureau Federation, Inc. ("Farm Bureau") appeals from the superior court's order reversing the Office of Administrative Hearing's (the "OAH's") grant of summary judgment for Farm Bureau on one issue and affirming the OAH's denial of partial summary judgment for Farm Bureau on another issue. After careful review, we agree with Farm Bureau concerning the superior court's reversal, and we need not reach the superior court's affirmance. For the reasons explained below, we reverse the superior court's order.

## I. Factual & Procedural Background

This case involves a permitting process for farmers. "It is the public policy of the State to maintain, protect, and enhance water quality within North Carolina." N.C. Gen. Stat. § 143-211(b) (2021). To that end, the General Assembly authorized the Environmental Management Commission (the "EMC") to establish a permitting system to regulate animal-waste management systems within North Carolina. *See id.* §§ 143-215.10C(a), 143B-282(a). Specifically, subsection 143-215.10C(a) provides:

> No person shall construct or operate an animal waste management system for an animal operation or operate an animal waste management system . . . without first obtaining an individual permit or a general permit under this Article . . . . The Commission shall develop a system of individual and general permits for animal operations and dry litter poultry facilities based on species, number of animals, and other relevant factors . . . . It is the intent of the General Assembly that most animal waste management systems be permitted under a general permit. The Commission, in its discretion, may require that an animal waste management system be permitted under an individual permit if the Commission determines that an individual permit is necessary to protect water quality, public health, or the environment.

*Id*. § 143-215.10C(a).

In other words, farmers who use certain animal-waste management systems must first obtain either a general or an individual permit ("General Permit" and "Individual Permit," respectively) to do so. *See id*. Although it "is the intent of the General Assembly that most animal waste management systems be permitted under a general permit," the EMC may grant Individual Permits when it deems necessary. *See id*.

The EMC delegated its permitting authority to the Division of Water Resources (the "DWR") of the Department of Environmental Quality (the "DEQ"). *See id*. § 143-215.3(a)(4). In order to enforce permit conditions, the Secretary of Environmental Quality may assess civil penalties for thousands of dollars for failing to comply. *Id*. § 143-215.6A(a).

On 3 September 2014, the North Carolina Environmental Justice Network,

along with other nonprofits (collectively, "Complainants"), filed a complaint against the DEQ with the United States Environmental Protection Agency's Office of Civil Rights, alleging that permits issued by the DEQ discriminated on the basis of race. On 3 May 2018, the DEQ settled with Complainants. The settlement agreement included a draft General Permit that included conditions that the DEQ agreed to submit "for consideration during its Stakeholder Process." Farm Bureau participated in the stakeholder process by submitting written comments following stakeholder meetings, providing oral comments at public meetings, and submitting comment letters. The DWR issued final versions of the revised General Permits on 12 April 2019.

On 10 May 2019, Farm Bureau filed three case petitions in the OAH. The OAH consolidated the cases. Farm Bureau contended the DWR unlawfully included three conditions in the General Permits. First, Farm Bureau argued the conditions were not properly adopted as "rules" under the North Carolina Administrative Procedure Act (the "NCAPA"). Second, Farm Bureau argued the DWR was improperly influenced by the settlement agreement.

Through these arguments, Farm Bureau specifically challenged three General Permit conditions: (1) farmers with waste structures within the 100-year floodplain must install monitoring wells; (2) certain farmers must conduct a Phosphorus Loss Assessment Tool ("PLAT") analysis; and (3) all permitted farmers must submit an annual report summarizing the system's operations. The North Carolina

Environmental Justice Network and the North Carolina State Conference of the National Association for the Advancement of Colored People (collectively, "Intervenors") moved to intervene in the case, but the OAH denied their motion.

At a summary-judgment hearing on 9 February 2021, the OAH concluded that the three challenged conditions were "rules" under the NCAPA, and because they were not noticed and adopted as such, they were unlawfully included in the General Permits. The OAH also concluded that the DWR was not improperly influenced by the settlement agreement. The OAH did, however, find that "[t]he genesis of the terms of the special conditions under review are part of the Settlement Agreement reached in order to end the Title VI lawsuit." The DWR appealed, contesting the OAH's holding on the rule issue. Intervenors appealed the OAH's denial of their motion to intervene. And Farm Bureau appealed the OAH's conclusion on the settlement-agreement issue. The parties appealed all issues to Wake County Superior Court.

On 20 June 2022, the superior court resolved all of the issues in a single order, reversing the OAH concerning the rule issue and affirming the OAH concerning the settlement-agreement issue. The superior court also held that the OAH improperly denied Intervenors' motion to intervene. Farm Bureau timely appealed from the superior court on 8 July 2022.

The parties have stipulated that intervention is no longer an issue before this Court. As a result, Farm Bureau is the sole appellant; the DWR and Intervenors are

co-appellees. On appeal, Farm Bureau challenges the superior court's reversal of the OAH's rule determination and the superior court's affirmance of the OAH's settlement-agreement determination.

## II.    Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(1) (2021).

## III.    Issues

The issues on appeal are whether the superior court erred in concluding: (1) the challenged General Permit conditions are not rules; and (2) the DWR was not improperly influenced by the settlement agreement when it created the challenged General Permit conditions.

## IV.    Standard of Review

The purpose of the NCAPA is to "establish[] a uniform system of administrative rule making and adjudicatory procedures for agencies." N.C. Gen. Stat. § 150B-1(a) (2021). The NCAPA governs the review of OAH decisions. *Sound Rivers, Inc. v. N.C. Dep't of Env't Quality, Div. of Water Res.*, 271 N.C. App. 674, 693, 845 S.E.2d 802, 816 (2020). When reviewing OAH decisions, courts apply different standards based on "the substantive nature of each assignment of error." *N.C. Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649, 658, 599 S.E.2d 888, 894 (2004). A reviewing court may:

> reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;
(2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Unsupported by substantial evidence admissible under [N.C. Gen. Stat. §§] 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
(6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b) (2021). We review asserted errors under subsections (1) through (4) de novo. *Carroll*, 358 N.C. at 659, 599 S.E.2d at 896. We review asserted errors pursuant to subsections (5) or (6) under the "whole record" test. *Id*. at 659, 599 S.E.2d at 896.

"'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

## V. Analysis

### A. Rules Under the NCAPA

The first issue is whether the conditions within the General Permits are rules under the NCAPA. This is a question of law, which we review de novo. *See Carroll*, 358 N.C. at 659, 599 S.E.2d at 896.

In statutory interpretation, "[w]e take the statute as we find it." *Anderson v. Wilson*, 289 U.S. 20, 27, 53 S. Ct. 417, 420, 77 L. Ed. 1004, 1010 (1933). This is because "a law is the best expositor of itself." *Pennington v. Coxe*, 6 U.S. (2 Cranch)

33, 52, 2 L. Ed. 199, 205 (1804). And when examining statutes, words that are undefined by the legislature "must be given their common and ordinary meaning." *In re Clayton-Marcus Co.*, 286 N.C. 215, 219, 210 S.E.2d 199, 202–03 (1974). Nonetheless, we must follow precedent if our appellate courts have already interpreted a statute. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

The NCAPA defines a "rule" as "[a]ny agency regulation, standard, or statement of general applicability that implements or interprets an enactment of the General Assembly . . . ." N.C. Gen. Stat. § 150B-2(8a). A rule is invalid "unless it is adopted in substantial compliance with" the NCAPA's rulemaking requirements. *Id.* § 150B-18.

Here, the parties do not dispute that the General Permit conditions "implement[] or interpret[] an enactment of the General Assembly." *See id.* §§ 150B-2(8a), 143-215.10C(a) (authorizing a permitting system to regulate animal-waste management systems within North Carolina). But the parties do dispute whether the challenged General Permit conditions are "regulation[s], standard[s], or statement[s] of general applicability." *See id.* § 150B-2(8a).

1. **Whether the General Permit Conditions are Regulations, Standards, or Statements**

We begin with whether the conditions are "regulations." The NCAPA does not define "regulation." *See id.* § 150B-2. Therefore, we must discern its "common and

ordinary meaning." *See In re Clayton-Marcus Co.*, 286 N.C. at 219, 210 S.E.2d at 202–03. Absent precedent, we look to dictionaries to discern a word's common meaning. *Midrex Techs., Inc. v. N.C. Dept. of Rev.*, 369 N.C. 250, 258, 794 S.E.2d 785, 792 (2016). Merriam-Webster's defines "regulation" as "an authoritative rule dealing with details or procedure." *Regulation*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003).

Here, any farmer who uses certain animal-waste management systems must obtain a permit and comply with its conditions. *See* N.C. Gen. Stat. § 143-215.10C(a). The challenged General Permit conditions concern details like installation of monitoring wells within the 100-year floodplain, PLAT analysis, and submission of annual reports summarizing waste-management system operations. These conditions are authoritative, as the DWR has the authority to grant permits, which are required to operate the animal-waste systems. *See id.* Further, the Secretary of Environmental Quality has the authority to assess civil penalties for thousands of dollars if a farmer fails to comply with these conditions. *See id.* § 143-215.6A(a).

Therefore, the General Permit conditions are regulations under the NCAPA because they are "authoritative rule[s] dealing with details" of animal-waste management systems. *See,* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, *supra*; N.C. Gen. Stat. § 150B-2(8a). Because the conditions are "regulations," we need not determine whether the conditions are also "standards" or "statements." *See* N.C. Gen. Stat. § 150B-2(8a). To be a "rule," an agency action only needs to be one of the three.

*See id.*

## 2. Whether a Regulation Must be Generally Applicable

We must now determine whether "general applicability" applies to regulations. Under the last-antecedent canon, "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows . . . ." *Barnhart v. Thomas*, 540 U.S. 20, 26, 124 S. Ct. 376, 380, 157 L. Ed. 2d 333, 340 (2003). Following that principle, "general applicability" should be read as only modifying "statement." *See id.* at 26, 124 S. Ct. at 380, 157 L. Ed. 2d at 340. Thus, if we apply the last-antecedent canon, all regulations and standards are rules, regardless of applicability. *See* N.C. Gen. Stat. § 150B-2(8a). This Court, however, has not interpreted subsection 150B-2(8a) that way.

Specifically, we did not apply the last-antecedent canon when we interpreted subsection 150B-2(8a) in *Wal-Mart Stores East, Inc. v. Hinton*, 197 N.C. App. 30, 56, 676 S.E.2d 634, 652–53 (2009). There, this Court analyzed an agency "standard" and held that the standard did not have "general applicability" and was, therefore, not a "rule." *Id.* at 56, 676 S.E.2d at 652–53. Bound by our logic in *Wal-Mart*, if a standard requires general applicability, then so does a regulation. *See id.* at 56, 676 S.E.2d at 652–53; *In re Civil Penalty*, 324 N.C. at 384, 379 S.E.2d at 37.

In other words, if the last-antecedent canon does not prevent extending "general applicability" to "standard," the canon should not prevent extending general applicability to "regulation," either. *See Wal-Mart,* 197 N.C. App. at 56, 676 S.E.2d

at 652–53; N.C. Gen. Stat. § 150B-2(8a); *see also Barnhart*, 540 U.S. at 26, 124 S. Ct. at 380, 157 L. Ed. 2d at 340 (stating that the last-antecedent canon is not absolute).

Therefore, because we do not apply the last-antecedent canon to subsection 150B-2(8a), a "regulation" must have "general applicability" to be a "rule." *See* N.C. Gen. Stat. § 150B-2(8a); *Wal-Mart*, 197 N.C. App. at 56, 676 S.E.2d at 652–53; *In re Civil Penalty*, 324 N.C. at 384, 379 S.E.2d at 37.

### 3. Whether the General Permit Conditions are Generally Applicable

We must now decide whether the General Permit conditions are generally applicable. Again, the NCAPA does not define "general applicability," *see* N.C. Gen. Stat. § 150B-2, so we must discern its "common and ordinary meaning," *see In re Clayton-Marcus Co.*, 286 N.C. at 219, 210 S.E.2d at 202–03. The *Wal-Mart* Court, however, has already discerned the common meaning of "general applicability." *See Wal-Mart*, 197 N.C. App. at 56, 676 S.E.2d at 652–53. So we must adhere to it. *See In re Civil Penalty*, 324 N.C. at 384, 379 S.E.2d at 37.

In *Wal-Mart*, this Court defined "general applicability" in the negative, stating that a rule is not generally applicable if it "is exceptional, and not allowed unless specifically required." *Id.* at 56, 676 S.E.2d at 652–53. In other words, a rule is generally applicable if it is not exceptional and is allowed without specific requirements. *See id.* at 56, 676 S.E.2d at 652–53. Said another way: A rule is generally applicable if it applies to most situations. *See id.* at 56, 676 S.E.2d at 652–53.

Here, General Permits and "general applicability" share the same descriptor: general. And the explicit "intent of the General Assembly [is] that most animal waste management systems be permitted under a general permit." *See* N.C. Gen. Stat. § 143-215.10C(a). On the other hand, Individual Permits are intended to be the second option. *See id.* Individual Permits are exceptional; whereas General Permits are not. *See id.* Aptly named, General Permit conditions have general applicability because the General Permits are to be used for "most animal waste management systems," and the General Permits are applicable notwithstanding special circumstances. *See id*; *Wal-Mart,* 197 N.C. App. at 56, 676 S.E.2d at 652–53.

The DEQ argues that General Permits are not generally applicable because farmers can obtain Individual Permits instead. First, we question the DEQ's premise that Individual Permits are guaranteed. Allotting Individual Permits under section 143-215.10C is within the DEQ's "discretion." *See* N.C. Gen. Stat. § 143-215.10C(a). Thus, contrary to the DEQ's suggestion, Individual Permits are not automatic. *See id.* Second, if farmers can avoid the challenged General Permit conditions simply by seeking an Individual Permit, all farmers would likely do so. Following the DEQ's reasoning would render General Permits worthless and fly in face of section 143-215.10C: Our General Assembly expressly stated that General Permits are to be used for "most animal waste management systems." *See id.*

Therefore, the conditions within General Permits are generally applicable regulations under the NCAPA. They are rules, and the superior court erred when it

held to the contrary. *See id*. § 150B-2(8a). Because rules are invalid "unless [they are] adopted in substantial compliance with" the NCAPA rulemaking requirements, we reverse the superior court on the rule issue. *See id*. § 150B-18. The challenged conditions are invalid until they are adopted through the rulemaking process. *See id*.

## B. Settlement Agreement

The second issue on appeal is whether the settlement agreement improperly influenced the DWR in creating the challenged General Permit conditions. We need not reach this issue, however, because the challenged conditions were unlawfully adopted, notwithstanding the settlement agreement. *See id*. Thus, we need not determine whether the superior court erred in affirming the OAH's denial of summary judgment for Farm Bureau on the settlement-agreement issue. *See id*.

## VI.    Conclusion

The superior court erred in reversing the OAH's grant of summary judgment to Farm Bureau concerning whether the challenged General Permit conditions are rules under the NCAPA. We conclude the challenged conditions are rules, and they must be adopted as such. Therefore, we reverse the superior court's order concerning the rule issue. We need not address the settlement-agreement issue, as the challenged conditions are invalid, regardless of the effect of the settlement agreement.

REVERSED.

Judges TYSON and GORE concur.