## Yerkes v. Yerkes, Appellant.

| | |
|---|---|
| 200 | 419 |
| 202 | [2]192 |
| 202 | [3]196 |

| | |
|---|---|
| 200 | 419 |
| 21 SC | 66 |

| | |
|---|---|
| 200 | 419 |
| 206 | [3]459 |
| 200 | 419 |
| 212 | [1]318 |
| 212 | [2]321 |
| j212 | 325 |

| | |
|---|---|
| 200 | 419 |
| j220 | [3] 97 |

| | |
|---|---|
| 200 | 419 |
| 225 | [1]358 |

*Will—Conversion—Equitable conversion.*

The doctrine of equitable conversion is based on the rule that what is to be, or ought to be done shall be treated as if done already. It is a fiction therefore invented to sustain and carry out the intention of the testator or settlor, never to defeat it. Its application requires constant watchfulness to guard against the tendency to become a formal rule de jure without regard to its real purpose and necessity. It should never be overlooked that there is no real conversion, the property remains all the time in fact realty or personalty as it was, but for the purpose of the will so far as it may be necessary, and only so far, it is treated in contemplation of law as if it had been converted.

The presumption, no matter what the form of words used, is always against conversion, and even where it is required it must be kept within the limits of actual necessity.

Testator gave his entire estate to his widow for life, " she paying all taxes, water rent, and expenses of repairing to keep the estate in good and tenantable order." He added a proviso that if his widow should remarry, she should have only the net income of one third. He then directed as follows: " My will is that immediately after the death of my said wife, or if she should marry, or as soon as it might be to the advantage to sell it at a fair price, I order and direct my three children, or the survivor or survivors of them . . . . to sell all of my said real estate, . . . . subject to the right to their mother therein and the net proceeds of such sale or sales to be divided between them share and share alike, as tenants in common and not as joint tenants; and my will is to be under-

stood to include all my said estate, real, personal and mixed, whatsoever and wheresoever, that I now have or hereafter may have, and die seized or possessed of at the time of my decease, and to be divided share and share alike between my said children, and to the respective heirs and assigns. But if either of my said children should die leaving lawful issue, such issue to take parent's share, if but one the whole, if more than one, share and share alike, as tenants in common." _Held_, that the will did not work such a conversion of real estate as would prevent in the lifetime of the mother, the lien of a judgment attaching against an interest of a child.

Argued March 29, 1901. Appeal, No. 51, Jan. T., 1901, by defendant, from decree of Superior Court, Oct. T., 1900, No. 154, affirming decree of C. P. No. 1, Phila. County, Dec. T., 1899, No. 1129, on bill in equity in case of Seymour Yerkes v. Matilda or Tillie Yerkes. Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER JJ. Reversed.

Bill in equity to declare a trust and for an account.

The bill averred that Charles Yerkes, the father of both parties, died seized of certain real estate, in 1878, leaving a will by which he appointed his wife, Hannah, executrix, and bequeathed to her the net income of all his real and personal estate for life, and directed their three children, the complainant, the defendant (now appellant), and Roberts H. Yerkes, or the survivors of them, at his wife's death, to sell all his real estate, and divide the proceeds equally ; that Robert H. Yerkes died before his mother, having first made a will by which he bequeathed his interest in the real estate to her; that she died in 1898, having made a will by which, after providing a small annuity for complainant, she devised the residue of her estate to the defendant; that complainant retained his interest in said real estate ; that no sale thereof was made after his mother's death, but that defendant wrongfully took possession of all of it, and converted all the rents to her own use.

The bill prayed for a decree that defendant is a trustee of the income of the real estate, to the extent of one third, for complainant; and for an accounting and discovery of all defendant's transactions with regard thereto after her mother's death.

· The answer set out that complainant's interest in the premises was divested by a sheriff's sale upon a judgment against him in 1886, and that in 1888, the purchaser conveyed that in-

terest to defendant, and took a mortgage on the premises from defendant and her mother, and averred that therefore complainant had no right to an accounting. It also set up that complainant had an adequate remedy at law.

The material portions of the will of Charles Yerkes are as follows :

." I give and bequeath unto my said wife Hannah Yerkes all and singular the net interest, income, dividends and rents of my estate both real, personal and mixed that I now have or hereafter may have and die seized of for and during all the term of her natural life, she paying all taxes, water rents and expenses of repairing to keep the said real estate in good and tenantable order, Provided she so long remain my widow and unmarried. But if my said wife, Hannah Yerkes, should marry then it is my will and desire that she takes and has only one equal third part of the said net income of my said estate for and during the remainder of her natural life.

"Item. My will is that immediately after the death of my said wife Hannah, or if she should marry, or as soon as it might be to the advantage to sell at a fair price, I order and direct my three children or the survivors or survivor of them, viz., Robert H. Yerkes, Seymour Yerkes and Tillie Yerkes to sell all of my said Real Estate either at public or private sale or sales for the best price that can be gotten therefor subject to the right of their mother therein and the net proceeds of such sale or sales to be divided between them share and share alike as ten ants in common and not as joint tenants, and my will is to be understood to include all my said estate, real, personal and mixed whatsoever and wheresoever that I now have or hereafter may have and die seized or possessed of at the time of my decease and to be divided share and share alike between my said children, Robert H. Yerkes, Seymour Yerkes and Tillie Yerkes, and to their respective heirs and assigns. But if either of my said children should die leaving lawful issue such issue to take its parent's share, if but one the whole, if more than one share and share alike as tenants in common. .

" Item: I hereby nominate, and constitute and appoint my said wife, Hannah Yerkes, to be the sole Executrix of this my last Will and Testament as long as she remains my widow and unmarried and no longer."

The court entered the following decree :

And now, to wit, June 25, 1900, this cause came on to be heard at this term on bill and answer, and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows, viz : That the defendant Matilda Yerkes is a trustee of all the rents and income of the several pieces of real estate described in the bill of complaint collected by her since December 21, 1898, one third of which said rents the plaintiff is entitled to receive as a beneficiary under the last will and testament of Charles Yerkes, deceased.   And it is further ordered and decreed that the said defendant shall, within fifteen days from the date hereof, state and file an account of all and singular the rents and income of said several pieces of real estate since December 21, 1898, together with an account of all proper and necessary expenditures in relation thereto made by defendant for which the plaintiff would be chargeable, and further, that upon the coming in of such account the plaintiff have leave to apply to the court for such further order and decree in the premises as may be necessary and equitable for the enforcement of his rights in the premises

*Error assigned* was the decree of the Superior Court.

*John G. Johnson*, with him *Charles H. Pile*, for appellant.— The lands were devised to the devisees named, in fee simple, with a direction to sell and to distribute the proceeds amongst themselves, which direction to sell was inefficacious and did not alter the character of the " rem."

In case of an exercise of the power of sale, if the same could be exercised, the proceeds of sale would go to the owners of the land whose title was subject to the power and was divested by its exercise.

*William H. Peace*, for appellee.—It is a principle of construction in interpreting two apparently repugnant clauses in a will that to exclude for repugnance is only to be invoked as a last resort, after all efforts to reconcile and give harmonious meaning to both have failed : Hart v. Stayer, 164 Pa. 523.

While these devisees had not under the will an estate in the land that could be bound by the lien of a judgment against

either of them, their interest in the proceeds, present or prospective, was subject to an attachment execution, and the courts possess the power to enforce by proper execution the recovery of such person's share therein: Selfridge's App., 9 W. & S. 55; Allison v. Wilson, 13 S. & R. 332; Morrow v. Brenizer, 2 Rawle, 185.

There was an equitable conversion of the real estate: Jones v. Caldwell, 97 Pa. 43; McClellan's Est., 158 Pa. 639; Brolasky v. Gally, 51 Pa. 509; Bailey v. Allegheny National Bank, 104 Pa. 425.

Until the act of election the heirs have no estate or title which would be the proper subject of a lien either by judgment or by mortgage; Henderson v. Henderson, 133 Pa. 408.

OPINION BY MR. JUSTICE MITCHELL, October 11, 1901:

The doctrine of equitable conversion is based on the rule that what is to be, or ought to be done shall be treated as if done already. It is a fiction therefore invented to sustain and carry out the intention of the testator or settlor, never to defeat it. Its application requires constant watchfulness to guard against the tendency to become a formal rule de jure without regard to its real purpose and necessity. It should never be overlooked that there is no real conversion, the property remains all the time in fact realty or personalty as it was, but for the purpose of the will so far as it may be necessary, and only so far, it is treated in contemplation of law as if it had been converted. Few testators have any knowledge of the doctrine or any actual intent to change the nature of their property except when and to the extent that may be required to carry out the special purpose of the will. The presumption therefore, no matter what the form of words used, is always against conversion, and even where it is required it must be kept within the limits of actual necessity. These are very elementary propositions, but it is necessary to recur to them frequently to avoid the tendency already referred to, the danger of which is apparent in many of our cases.

The testator in the present case clearly did not contemplate any change in the nature of his property, except in certain events, which were future and contingent. He first leaves his entire estate to his widow for life, " she paying all taxes, water

rent, and expenses of repairing to keep the estate in good and tenantable order," thus indicating his expectation that it should continue realty. Then he adds a proviso that if his widow should remarry, she should have only the net income of one third.

The next clause is the important one on which this controversy turns : " Item. My will is that immediately after the death of my said wife, Hannah, or if she should marry, or as soon as it might be to the advantage to sell it at a fair price, I order and direct my three children, or the survivors or survivor of them, . . . . to sell all my said real estate, . . . . subject to the right of their mother therein and the net proceeds of such sale or sales to be divided between them share and share alike, as tenants in common and not as joint tenants ; and my will is to be understood to include all my said estate, real, personal and mixed, whatsoever and wheresoever, that I now have or hereafter may have, and die seized or possessed of at the time of my decease, and to be divided share and share alike between my said children, Robert H. Yerkes, Seymour Yerkes and Tillie Yerkes, and to the respective heirs and assigns. But if either of my said children should die leaving lawful issue, such issue to take parents' share, if but one, the whole, if more than one, share and share alike, as tenants in common."

This clause it will be seen contains a double gift to his children, of the proceeds of the land and of the land itself. It is not to be supposed that the testator entertained or meant to express any such contradictory purposes. What then was his actual intent ? An examination of the general scheme of the will makes it reasonably clear that he meant to give the land, as land, to his widow for life, and then to his children, including the issue of those who might be dead at the termination of the life estate, as tenants in common. But if the widow should remarry, a complication would arise, and even without that a sale might be for the general advantage, and therefore he gave the direction to sell. But the direction was only intended to meet one or other of these contingencies.

If the first clause stood alone although we might still think his intention the same, we should be met with the difficulty of ignoring the direction to sell " immediately after the death of

my said wife." But if he meant a peremptory sale in any event, why did he add the second clause? Clearly because a sale was not his object but only a means, and his primary intent which he sought to make plainer was not to give money but land, the sale being merely the most convenient way that occurred to him to produce an equal division. This becomes still plainer when we note that the sale is to be "subject to the right of their mother therein," an apt and proper provision for a sale on the mother's remarriage, or a sale during her widowhood, for the general advantage, but wholly inapplicable to a sale "immediately after her death." If we reverse the order of the clauses of the sentence we make the meaning clearer without altering a word. The will is to be understood "to include all my estate . . . . to be divided share and share alike between my said children," and then if we add the first clause with the direction to sell, we have either a direction to sell superposed upon a devise in fee and therefore nugatory, or what is a preferable construction, a direction to sell, which notwithstanding the peremptory form of its first command is meant to be contingent and worked no conversion until the contingency happened.

This construction exonerates the testator from having made an inconsistent and repugnant will, and without altering a word, carries out what was clearly his actual intent.

The suggestion of a trust is inapplicable. The devise is to the children as tenants in common of the legal title, with all the usual incidents of such title, and even in case of a sale under the first clause they were not trustees but joint owners acting jointly but each for himself in the sale of the common property.

Decree reversed and bill directed to be dismissed with costs.