## Williams's Estate.

*Wills—Conversion—Authorization of sale by executors distinguished from a positive direction to sell.*

The testator, after devising all real estate to his widow for life with remainder to his children, etc., authorized, empowered and directed his executors to sell all real estate whenever they should deem it for the best interests of the estate, and also authorized, empowered and directed them, if in their judgment they should see fit and proper, to pay to his widow such sums out of the proceeds of sales as might be necessary for her proper and suitable support, and he further authorized them, to this end, to mortgage the property: *Held*, not to be a positive direction to sell, but a mere authorization to sell for the convenient management of the estate and to insure a proper support for the widow, and not to work a conversion; hence, the proceeds of the sale passed as real estate and not as personalty.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1922, No. 438.

*Nicholas H. Larzelere, Franklin L. Wright* and *Charles Townley Larzelere,* for exceptions.

*S. Lloyd Moore* and *Allen M. Stearne,* contra exceptions.

THOMPSON, J., June 15, 1922.—The question in this case is: Does testator's will work an equitable conversion of his real estate? The facts appear in the adjudication of Henderson, J., as follows:

The testator, David Williams, died Feb. 27, 1906. After bequeathing all his personal estate, except a grandfather's clock, to his wife, he provided by his will as follows:

"Third. I hereby give, devise and bequeath all of my real estate unto my said wife, Caroline Williams, for and during the term of her natural life and from and immediately after the decease of my said wife, I give, devise and bequeath the same and every part thereof unto my children, share and share alike; the issue of any deceased child or children to take the share or shares their parent or parents would have taken if living at the time of my death, this to include the children of my deceased son, Jacob M. Williams.

2 D. & C.

Williams's Estate.

"Fourth. I hereby authorize, empower and direct my Executors, hereinafter named, or the survivor of them, to sell either at public or private sale or sales any or all of my said real estate whenever they shall deem it to the best interest of my said estate, and to make, execute and deliver to the purchaser or purchasers thereof good and sufficient deed or deeds and other assurances in the law necessary to properly convey and assure the same without any liability on the part of the purchaser or purchasers thereof to see to the application of the purchase money. And I do further authorize, empower and direct my said Executors or the survivor of them, if in their judgment they shall see fit and proper, to pay over unto my said wife, from time to time, such sums of money out of the proceeds of the sale of any or all of my said real estate as may be necessary for her proper and suitable support, and to this end I further authorize, empower and direct my said Executors or the survivor of them to give any Bond or other evidence of indebtedness secured by mortgage upon any or all of my said real estate, without liability on the part of the Mortgagee to see to the application of the mortgage money."

The testator left surviving him a wife, who died July 31, 1921, and six children, and two children of his deceased son, Jacob M.

Horace E. Williams, Frances M. McDowell, Flora W. Foehr, Eleanor M. Brooks and Melisse W. Green, children, are living.

Belle M. Thompson, a daughter, having intermarried with J. Byron Thompson, died Dec. 8, 1913, intestate and without issue. She survived the testator, her father, but predeceased her mother, the life-tenant. Her husband, J. Byron Thompson, survived her, is the administrator of her estate, and claims her share of the proceeds of real estate sold as personalty.

Lynford J. Williams, one of the grandchildren, is living. Edna Prince, the other grandchild, died Dec. 29, 1918, leaving a will, whereby she gave her entire estate to her husband, Burling D. Prince; she also left to survive her two children, who were born after the date of her will.

The fund now before the court is the proceeds of real estate sold on Nov. 25, 1921, under a power in the will.

The test for equitable conversion, laid down as settled law in Hunt's Appeal, 105 Pa. 128, has been uniformly followed, viz.: "In order to work a conversion, there must be either . . . (1) a positive direction to sell; or (2) an absolute necessity to sell in order to execute the will; or (3) such a blending of real and personal estate by the testator in his will as to clearly show that he intended to create a fund out of both real and personal estate, and to bequeath the said fund as money." Hunt's Appeal has been approved in Chamberlain's Estate, 257 Pa. 113. "The presumption, no matter what the form of words used, is always against conversion, and even where it is required, it must be kept within the limits of actual necessity:" Yerkes v. Yerkes, 200 Pa. 419.

In Alan Wood's Estate, 20 Phila. 107, Judge Penrose said, inter alia: "That the heir will not be disinherited except by express words or necessary implication, and that all doubts will be resolved against the person claiming adversely to him is a fundamental principle of the law of real estate, applicable no less to the heir of a devisee than to the heir of a testator. The policy of the law, as shown by the provision of the statute, is that the inheritance shall not pass under the intestate laws to one not of the blood of the first purchaser. There ought to be no relaxation of the doctrine in favor of a husband who, after getting his wife's personal estate, sets up a claim, on grounds purely technical, to the absolute ownership of her real estate also."

As was said by the auditing judge:

"It should also be pointed out that the testator used the word 'direct' in the fourth clause containing the power of sale in three different places, and in each connection he limits the meaning by a subsequent clause. He first provides: 'I hereby authorize and empower and direct my executors . . . to sell . . . whenever they shall deem it to the best interest of my said estate. . . .' The next clause of this paragraph provides: 'And I do further authorize, empower and direct my executors, . . . if in their judgment they shall see fit,' etc., and, after providing that the proceeds of the sale of any real estate could be paid to his wife for her support in the discretion of his executors, the testator adds: 'To this end I further authorize, empower and direct my said executors . . . to give any bond . . . secured by mortgage upon any or all of my said real estate. . . .'

"It is thus evident that the testator has in his fourth paragraph of his will used the word 'direct' only in the sense that it is subject to the exercise of a discretion vested in his executors.

"In Henszey's Estate, 220 Pa. 212, the language of the will is much like that now before us: 'I authorize, empower and direct my said executors and trustees to sell all or any part of my real estate at such time and times as they shall think proper,' etc. In the opinion of the court below in this estate, the language of Judge Anderson is directly in point. He said (16 Dist. R. 446):

" 'In support of this contention (a positive direction to sell) the power above quoted is cited. It will be noticed, however, that the power, while it contains a direction to the executors and trustees to sell, is, in the language of the auditing judge, 'accompanied with a discretion so ample that it ceased to be a command. Under it, and in full compliance with its provisions, the executors could sell the most minute part of the estate or the whole estate, just as they should see fit, and at any time, no matter how remote. See, on this point, Sauerbier's Estate, 202 Pa. 187; Yerkes v. Yerkes, 200 Pa. 419,' &c.

" 'In addition to that, it will be noticed that this power does not of itself direct that the sale, when made, shall necessarily convert the real estate into money, as in it is given the right to the executors to reserve ground rents; and if that is done, ground rents being real estate, under such a sale no conversion takes place: Harrison's Estate, 217 Pa. 207. So, taking the construction of the exceptants of this power, that it is a peremptory direction to sell, it is not such a sale as is contemplated would equitably convert the real estate into personalty.'

". . . In view of the antecedent devise of the real estate as such to the children, and of the presence of a power to mortgage, and the fact that the force of the word 'direct' is cut down so that it only means direct after the exercise of the executor's discretion, I have reached the conclusion that the power of sale does not work a conversion, and, hence, the real estate, or the proceeds thereof, upon the death of the widow passes to the children.

"Mrs. Thompson's share will be payable to her brother and sisters and the children of a deceased brother."

As was said in Severns's Estate (No. 1), 211 Pa. 65, 68: "The fact that the time when, and the terms upon which, the sale should be made are discretionary with the executrix does not give the latter authority to prevent a sale, nor to postpone it indefinitely. The discretion reposed in the executrix is a reasonable and not an arbitrary one, and must be exercised to carry out the plain intention of the testatrix that the property shall be converted into personalty and the proceeds distributed equally among the three sisters."

Upon a review of what has been said above, we are of opinion that the will of testator at bar does not contain a positive direction to sell his real estate
2 D. & C.

and distribute the proceeds as money, but the authorization and direction was inserted "for the convenient management of the estate" (Henszey's Estate, 220 Pa. 212) and to insure "proper and suitable support for the widow" (testator's will), both in the discretion of the executors, and that the discretion so vested was not confined only to the time and terms of sale. The real estate was primarily given as such to the children, and, therefore, the proceeds of the real estate sold will be distributed as real estate and not as personalty.

All exceptions are dismissed and the adjudication is confirmed absolutely.