**ARROTT v. HEINER, Former Collector of Internal Revenue.**

No. 6186.

Circuit Court of Appeals, Third Circuit.

Oct. 2, 1937.

Heard & Heard and Drayton Heard, all of Pittsburgh, Pa., for appellant.

Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, and J. W. Wideman, Sp. Assts. to Atty. Gen., and W. Croft Jennings, for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a judgment of the District Court denying the plaintiff's claim for refund for alleged overpayments of income taxes.

The plaintiff, Lyde R. Arrott, paid deficiency assessments on her income for the years 1924, 1925, and 1926. She contends that there were no deficiencies in her tax returns and she, therefore, brought suit in the District Court to recover them. These deficiencies resulted from the disallowance of certain deductions for depreciation and capital losses to the plaintiff on the ground that the legal title of the real estate here involved was held in trust and the trustees were entitled to these deductions for the benefit of the trust. The property involved is known as the Arrott Power Building and the Arrott Office Building. The plaintiff denies the existence of a trust and contends that she is the owner in fee of an undivided one-twelfth interest in the property. The District Court sustained the contention of the defendant, and the plaintiff appealed to this court.

The question in issue is whether or not the legal title to this property was held in trust during the taxable years. If it was, then the deficiency was properly assessed and collected, but, if it was not, the plaintiff as the owner in fee of one-twelfth of the real estate, and not the trustees, is entitled to these deductions and should recover, for the allowance of the deductions is not in question. The only question is the person to whom they should be allowed.

On December 29, 1902, James W. Arrott, a citizen of Pennsylvania, died testate. In his will, after making certain specific bequests, he divided the residue of his estate into six equal shares. Two of these shares he separately devised and bequeathed to his executors in trust for his

two daughters. Each of the remaining four shares, with one of which we are here concerned, he separately devised and bequeathed to each of his four sons. The language of these bequests, except for the amount of the deduction to be taken from each share, is identical and reads as follows: "One other of said shares less the sum of (amount of deduction) I give, devise and bequeath to my son (son's name)."

Further along in his will he made the following provision: "I direct, however, that the general settlement and division of my residuary estate shall not be made before January first, nineteen hundred and ten (1910). During the interval which may occur between my death and the general settlement and division of my residuary estate, my executors hereinafter named, the survivor and successor of them, shall have full management and control of said estate, in trust, to pay over the income * * * in equal shares to my said children. * * *"

He thereafter provided that the executors, should they think proper, could divide the personal property in specie and "may in like manner divide or apportion the rentals of real estate until the time arrives, when in their judgment, the real estate should be sold or disposed of."

In the eighth paragraph he appointed his wife and four sons "executors and trustees" under the will "with the power to sell and convey the real estate." He also provided as follows: "* * * while I do not positively direct, I most strongly urge and advise my said executors not to sell or dispose of the property * * * on which the Arrott Building is erected for (blank) years after my decease, unless for the most urgent and important reasons. * * *"

All of his debts, funeral and administration expenses, and legacies were paid prior to 1910, and substantially all of the residuary property was distributed prior to 1924, with the exception of the Arrott Power Building and the Arrott Office Building. The office building was sold in 1925 and the power building was sold in 1926.

The petitioner, as widow of William Arrott, one of the testator's four sons, and as mother of the deceased Willam Arrott, Jr., became the owner of a one-twelfth interest in the residuary property. The deductions, which she claims, amount to one-twelfth of the depreciation in 1924 upon these buildings and one-twelfth of the capital losses sustained, when they were sold by the executors, in 1925 and 1926.

Was the legal fee of the power and office buildings, in 1924, 1925, and 1926, held by the executors in a trust created by the will?

■ Since the testator was a citizen of Pennsylvania, and the property in question is situated therein, both the validity and the legal effect of the will is to be determined by the laws of that state.

■ It is well settled in Pennsylvania that a mere power of sale given to the executors by the testator does not work a conversion of the real estate. In the case of In re Marr's Estate, 240 Pa. 38, 40, 87 A. 621, 622, Ann.Cas.1915A, 167, the Pennsylvania law is stated by Judge Wilhelm, whose opinion was adopted by the Supreme Court:

"* * * to effect a conversion of real estate into personalty by will, there must be a positive direction to sell, or it is necessary to sell in order to carry out the provisions of the will, or there has been a blending of the real and personal property which creates a single fund out of which the beneficiaries are to be paid. * * *

"Unless it can be gathered from the entire will it was the intention of the testator to divide his estate among his legatees as money and not as land, it must be held there is no conversion into personalty. The rule is the intent of the testator is to be gathered from the four corners of the will."

■ If there is no positive direction to sell, until there is an actual necessity to sell, "the heir and the residuary legatee as well, is entitled to the possession, as an incident to title," and the executor who holds possession or who collects the rents, issues, and profits, acts as the agent of such heir or residuary legatee. In re Watt's Estate, 168 Pa. 431, 32 A. 25, 47 Am.St.Rep. 893; Kreise v. Cartledge, 262 Pa. 55, 104 A. 855.

"The presumption, therefore, no matter what the form of words used, is always against conversion; and even where it is required it must be kept within the limits of actual necessity." Yerkes v. Yerkes, 200 Pa. 419, 50 A. 186. In that case the testator left his estate to his widow for life and "immediately after the death of my said wife, or if she should marry, or as

soon as it might be to the advantage to sell it at a fair price, I order my three children, or the survivors, * * * to sell all my said real estate, * * * subject to the right of their mother therein, and the net proceeds of such sale * * * to be divided between them * * * as tenants in common. * * * My will is to be understood to include all my said estate, real, personal, and mixed, * * * and to be divided * * * alike between my said children." The Supreme Court of Pennsylvania held that these words did not effect a conversion of the real estate or create a trust thereof.

Can it be gathered from the "four corners of the will" in the case at bar that the testator intended that there should be à conversion of his real estate into personalty? Is a conversion necessary to carry out the provisions of the will, or is there a positive direction to sell the real estate, or has the realty and personalty been so blended as to create a single fund out of which the legatees are to be paid?

■ The testator obviously did not intend that the legal title to the four shares of his residuary estate devised to his four sons should be held in trust. It was not an oversight that he devised these shares to his four sons, for the words used clearly negative any intention that they be held in trust. The two shares immediately preceding those devised to his sons, he specifically devised to his executors in trust for his two daughters.

The will does not contain any "positive direction to sell" the real estate. It merely gives the executors the power to sell it "when in their judgment" it should "be sold or disposed of." The estate was solvent and the personal property was sufficient to satisfy all liabilities.

■ The provision giving the executors the "management and control of said estate, in trust, * * *" does not create a trust of the real estate or vest the legal title to it in the executors. Freedley's Appeal, 60 Pa. 344. A "trustee" to collect the rents for the decedent's family is a mere agent in whom no title is vested. Sill v. Blaney, 159 Pa. 264, 28 A. 251. "A careful reading of this will leads us to the conclusion that the power of sale was given for the purpose of conservation of his estate, that it was not the intention of the testator to dispose of his estate as money, and that the authority to sell given to his executors was at most simply a means that might be employed to produce equal division, and was not an object to be obtained." In re Marr's Estate, supra.

All of these considerations lead us to the conclusion that the legal title to the real estate was not vested in the executors as trustees but that it was vested in the residuary legatees. The Board of Tax Appeals, in the cases of James W. Arrott v. Commissioner, Charles F. Arrott v. Commissioner, Albert E. Arrott v. Commissioner, 23 B.T.A. 478, following this same line of reasoning, reached this same conclusion and found that the brothers of the plaintiff's husband were entitled to these same deductions.

The District Court, however, found that the testator did intend to place the legal title to this property in the executors as trustees; that the use of the words "trustee" and "trustees" indicated this intention; that it was necessary to sell the real estate in order to carry out the provisions of the will; and that there was a blending of the realty and personalty in the residuary clause.

Though the will might possibly lend itself to these two interpretations, we believe that the conclusion reached by the Board more closely approximates the actual intention of the testator, and is more in line with the decisions of the Pennsylvania courts. If there is any doubt in this matter, it should be resolved against a conversion, for the presumption is always against it. Yerkes v. Yerkes, supra.

The case of Anderson v. Wilson, 289 U. S. 20, 53 S.Ct. 417, 77 L.Ed. 1004, upon which the District Court relied, is not controlling in the present case, for, though the facts are very similar, the decision in that case depended upon the law of New York, but the decision in this case depends upon the law of Pennsylvania, which we think requires a reversal of the order of the District Court.

Reversed.