## COUNTY NAT. BANK & TRUST CO. OF SANTA BARBARA v. HELVERING, Commissioner of Internal Revenue.

### No. 7521.

United States Court of Appeals for the District of Columbia.

Decided May 19, 1941.

---

Paul B. Cromelin and John W. Townsend, both of Washington, D. C., for petitioner.

Sewall Key, J. P. Wenchel, Claude R. Marshall, Samuel O. Clark, Jr., and Ellis N. Slack, all of Washington, D. C., for respondent.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

MILLER, Associate Justice.

Ralph Isham, the taxpayer, was the father and sole devisee and legatee under the will of Albert Keep Isham, who died a resident of Santa Barbara, California, on November 8, 1931. The son's will was admitted to probate on December 7, 1931, in the Superior Court of the State of California in and for the County of Santa Barbara. The administrator's final account and report and petition for final distribution were filed on November 24, 1933. On December 4, 1933, the court entered its decree of settlement of accounts and final distribution; whereupon all remaining assets of the estate were delivered to and received by the taxpayer. Included among the assets of the estate were 500 shares of stock of the Guarantee Trust Company of Chicago, Illinois, the fair market value of which on November 8, 1931, the date of the son's death, was $182,250. These 500 shares of stock were sold by the administrator of the estate on November 27, 1933, approximately one week before entry of the decree of final distribution, for $107,680; $74,570 less than their value at the time of the son's death.

The administrator filed a fiduciary return of income (Form 1041) in respect of the decedent's estate for the year 1933, in which he reported an ordinary net income of $76,740.08, computed by including $84,789.69 income and deducting $8,049.61 for interest and taxes paid. In this fiduciary return, under the heading "Beneficiaries' Share of Income and Credits", the following three items were reported as distributed or distributable: (a) Dividends $83,840; (b) Ordinary net loss $7,099.92 (Interest and taxes paid $8,049.61 less income from interest $949.69); (c) Capital net loss $74,570 (resulting from sale of the Guarantee Trust Company Stock). It will be noted that the balance between the item of dividends and the two items of loss is $2,170.08. The administrator also filed an income tax return (Form 1040) in respect of the decedent's estate for 1933 in which he listed under income: (a) Interest $949,-69; (b) Loss from sale of capital assets $74,570; (c) Dividends $83,840; and showed a balance of Total Income $10,-219.69. Under deductions it listed: (d) Interest paid $2.11; (e) Taxes paid $8,-047.50; (f) Other deductions $2,170.08; totalling $10,219.69, and leaving a balance of Net Income $0.00. Item (f) was explained as follows: "Estate closed and income distributed during year." It will be noted that this item (f) is the same $2,170.-08 as the balance which results from deducting the listed losses from the listed item of dividends in the fiduciary return.

In his individual income tax return (Form 1040) for the year 1933, the taxpayer reported a gross income of $94,244.-57, including dividends received by the son's estate in the amount of $83,840. He also reported a capital net loss of $124,154.-57, including the amount of $74,570, representing the loss on the sale of the 500 shares of Guarantee Trust Company stock. The Commissioner determined that the taxpayer was required to return for taxing purposes all income received by the estate during the taxable year, but that he was not entitled to deduct the loss suffered from the sale of stock or amounts paid for certain estate and inheritance taxes by the ad-

ministrator. The Board of Tax Appeals upheld this determination, relying upon Section 162(c) of the Revenue Act of 1932.[1]

The taxpayer's representative, petitioner herein, now contends that under the California law[2] he, rather than the estate, was the owner of the properties comprising the decedent's estate; that consequently, he, rather than the estate, received the dividends and suffered the loss resulting from the sale of stock. It was upon this theory that he reported as income, the whole amount of dividends received by the estate from properties of the son's estate; in spite of the fact that both the fiduciary return and the estate's income tax return reported distribution to him of only $2,170.08. If the petitioner's contention is correct, then the taxpayer was also correct in reporting the income in his own income tax return and in claiming the loss as a deduction.[3]

But it is not necessary to rest our decision upon this ground. We may assume for the purpose of this decision that the contention is incorrect. It still does not follow that the Board's decision is correct. That decision is based upon Section 162(c) of the Revenue Act of 1932,[4] which reads as follows: "In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary." The gist of the Board's decision is found in the following excerpt therefrom: "The plain wording of the statute is that the beneficiary is taxable on all of the income of the estate 'properly paid or credited' to him during the taxable year. It is stipulated that the dis-

tributions which the father received from the estate during the taxable year 1933 included interest of $949.69 and dividends of $83,840. There is no question but that these amounts were 'income' to the estate and after they were 'properly' paid to the father they are deductible by the estate and taxable to him." Elsewhere throughout the opinion and in the government's brief the assumption is made that receipt by the taxpayer, from the estate, of the entire gross income of the estate is conceded. To the contrary it is not conceded. The petitioner's first contention—which we have assumed to be incorrect—was that the dividends were received by him directly, not from the estate. The Commissioner and the Board are apparently attempting to divide up the petitioner's contention; holding it to an admission that the taxpayer received the income, disregarding its contention that he received it directly or that the administrator was a mere conduit, and imputing to it, what it has neither contended nor admitted, that the income was paid or credited to him by the administrator. Moreover, the petitioner insists—as an alternative to its contention based upon its interpretation of the California law—that the only income of the estate which was distributed to the taxpayer within the meaning of Section 162(c) was $2,170.08. Supporting this alternative, the two returns made by the administrator show that no more than $2,170.08 was claimed as a deduction and distributed to him; and, finally, the Board's statement of the stipulation is incorrect. Being incorrect, it fails to support the conclusion based thereon. The stipulation, which was not only entered into by the parties but adopted by the Board as a finding of fact—shows that the taxpayer received only the *assets* of the estate, after its accounts had been settled and its liabilities discharged. The pertinent portion of the stipulation reads as follows: "During the year 1933, and prior to the filing of the final account and report and petition for final distribution, * * * *income* was derived from the properties comprising decedent's estate, as follows: (a) Interest $949.69, and (b)

---

[1] 47 Stat. 169, 220, 26 U.S.C.A. Int. Rev.Acts, page 541.

[2] Calif.Prob.Code (1931) § 300; Western Pac. Ry. v. Godfrey, 166 Cal. 346, 136 P. 284, Ann.Cas.1915B, 825; Security-First Nat. Bank v. Commissioner of Internal Revenue, 36 B.T.A. 72.

[3] Cf. Arrott v. Heiner, 3 Cir., 92 F.2d 773; Weber v. Commissioner of Internal Revenue, 2 Cir., 111 F.2d 766; Weigel v. Commissioner of Internal Revenue, 7 Cir., 96 F.2d 387, 389, 117 A.L.R. 366.

[4] 47 Stat. 169, 220, 26 U.S.C.A. Int. Rev.Acts, page 541.

dividends $83,840, all of which *income* was paid to and received by the administrator, and *is reflected* in the item of 'Cash on hand * * * $137,651.61', or elsewhere among the *assets* described in * * * [the] final account and report and petition for final distribution * * *. All of the *assets* described in * * * the final account and report and petition for final distribution, were distributed to and received by the taxpayer during the year 1933, except cash in the amount of $24,578.38, allowed and ordered paid to * * * persons * * * designated * * * [in] the decree of settlement of accounts and of final distribution * * *." (Italics supplied)

 It is true, as the government points out, that it is not necessary, in order for income to be properly distributable under Section 162(c), that it shall be net income of the estate. Thus, if the testator directs in his will, or if the local law requires that certain of the gross income shall be distributed, it may properly be distributed; in which case it will be taxable income, returnable by the legatee.[5]

But in the present case no provision was made by the will for paying income—gross or net—to the taxpayer during the period of administration or settlement of the estate; and no contention is made that the local law required its distribution to him. His position was, rather, that of a residuary devisee or legatee, to whom all properties were to go after the payment of claims and the discharge of liabilities.[6] If an executor purports to distribute income where neither the will nor the local law directs, it is necessary to inquire further to determine whether such income was *properly* paid or credited. For this purpose it is not sufficient that bookkeeping entries in the estate's accounts show distributions of income. If in fact the distributions were of assets rather than income then the bookkeeping is not controlling. And this may be true even though the bookkeeping shows that income was distributed and liabilities discharged by using assets; if in fact the liabilities thus discharged were sufficient to exhaust the income.[7] In the present case there is not

---

[5] Ardenghi v. Commissioner of Internal Revenue, 37 B.T.A. 345, affirmed, 2 Cir., 100 F.2d 406, certiorari denied, 307 U.S. 622, 59 S.Ct. 793, 83 L.Ed. 1501; Caldwell v. United States, 7 Cir., 102 F.2d 607; Abell v. Tait, 4 Cir., 30 F.2d 54, certiorari denied, 279 U.S. 849, 49 S.Ct. 346, 73 L.Ed. 993; Whitcomb v. Blair, 58 App.D.C. 104, 25 F.2d 528. Cf. Rathborne v. Commissioner of Internal Revenue, 37 B.T.A. 607. Cf. also, United States v. Blosser, 8 Cir., 104 F. 2d 119..

[6] Revenue Act of 1932, § 22(b) (3), 47 Stat. 169, 178, 26 U.S.C.A. Int.Rev. Act 1932, page 487, § 22(b) (3); Weigel v. Commissioner of Internal Revenue, 7 Cir., 96 F.2d 387, 391; Sanborn v. Commissioner of Internal Revenue, 8 Cir., 88 F.2d 134, 138, certiorari denied, 301 U.S. 700, 57 S.Ct. 930, 81 L.Ed. 1355; Durkheimer v. Commissioner of Internal Revenue, 41 B.T.A. 585, 586, 587: "The final account of the executor was filed with the Probate Court on July 3, 1936, and 'Order on final account and closing estate' was entered by the Probate Court on August 14, 1936, whereby the court allowed and approved the final account and authorized the petitioner as executor to transfer to himself in his own right 'all remaining assets in his possession as executor.' * * * Subdivision (c) has reference only to cases where the income has been paid or properly credited to the legatee during

the period of administration or settlement. We think it plain that there was no payment or credit to the residuary legatee in this case prior to the completion of the administration of the estate. At the hearing of this proceeding counsel for the respondent stated that he relied upon decisions of the Board in Robert C. Roebling, 28 B.T.A. 644, and Adolph Bernard Spreckels, 37 B.T.A. 709. Our decisions entered pursuant to the opinions in those cases were reversed by the United States Circuit Court of Appeals as follows: Roebling v. Commissioner (C.C.A., 3d Cir.), 78 F.2d 444; and Spreckels v. Commissioner (C.C.A., 9th Cir.), 101 F.2d 721. Counsel for the respondent stated that, inasmuch as there was no conflict in the opinions of the Circuit Courts, it was deemed inadvisable to recommend an application for a writ of certiorari in either of those cases." Cf. Burnet v. Whitehouse, 283 U.S. 148, 151, 51 S.Ct. 374, 75 L.Ed. 916, 73 A.L.R. 1534; Helvering v. Butterworth, 290 U.S. 365, 370, 54 S.Ct. 221, 78 L.Ed. 365; Security-First Nat. Bank v. Commissioner of Internal Revenue, 36 B.T.A. 72.

[7] Sitterding v. Commissioner of Internal Revenue, 4 Cir., 80 F.2d 939; Ardenghi v. Helvering, 2 Cir., 100 F.2d 406, certiorari denied, 307 U.S. 622, 59 S.Ct. 793, 83 L.Ed. 1501; McCahan v. Commissioner of Internal Revenue, 35 B.T.A. 943, 949.

even bookkeeping evidence of income distribution to the taxpayer in the amount claimed by the Commissioner. To the contrary, as already indicated, the returns filed by the administrator show that only $2,170.08 was distributed to the taxpayer, the amount now conceded by him. Except for the amount thus conceded, the evidence shows that the only distribution ever made to the taxpayer was that which occurred when, after all accounts had been settled, the court, not the administrator, distributed the residue of the estate to him, as sole beneficiary under the will. The only sense, therefore, in which the Commissioner's claim—that the entire gross income of the estate was paid or credited to the taxpayer—has any meaning, is that it was *reflected* in the corpus of the estate; into which it had been poured; out of which claims and expenses of administration had been paid; against which losses were properly chargeable; and all of which had occurred before the residue of that corpus was delivered to the sole devisee and legatee by the court. It was, indeed, a shadowy image of the gross income of the estate which was thus reflected from the surface of the pool which constituted its corpus.

The Commissioner's disallowance of the taxpayer's claim for deduction of the amount of the loss which resulted from the sale of the stock was for the stated reason that it was "a transaction affecting corpus of the estate." But having reasoned thus far correctly, he should have reached the further result that the loss was offset against the corpus of the estate[8]—of which the income had then become a part—before the residue of that corpus was distributed by the court to the taxpayer, hence that, since the taxpayer received no income except the item of $2,170.08, he was not liable for tax upon the rest of the income.

On this appeal the government concedes that the loss was the loss of the estate and that it reduced "the net income of the estate below the amount distributed", but contends that this fact does not aid the taxpayer, "for what he received was a distribution of income, properly made." In its opinion the Board said: "Undoubtedly the resulting loss of $74,570 was a loss of the estate, the benefit of which it might have claimed in its income tax return in accordance with the statute." [9] It then adopted the premise, urged by the government, that, nevertheless, the taxpayer received a distribution of the whole income, properly made, and concluded that he was taxable thereon. But, as has been shown, the premise is false and the conclusion falls with it.

To accept the Board's conclusion, when applied to the actual facts of the present case, would convert the optional, alternative provision of Section 162(c) into an unqualified, arbitrary requirement that a sole legatee or residuary legatee shall pay taxes upon the gross income received by an estate. But that is not its meaning. The statute requires, in order that the beneficiary may be taxable for such income, not merely that the deduction *might* have been *claimed;* it is necessary that it be *allowed;* and that it be allowed because it has been *distributed* as income to the beneficiary. In the present case the income was neither allowed as a deduction, nor paid or credited to the beneficiary as income, except in the amount of $2,170.08. We conclude, therefore, that he was taxable for that amount, and no more.

Reversed.

---

[8] *Durkheimer* v. Commissioner of Internal Revenue, 41 B.T.A. 585. Cf. Sitterding v. Commissioner of Internal Revenue, 4 Cir., 80 F.2d 939; Baltzell v. Mitchell, 1 Cir., 3 F.2d 428, certiorari denied, 268 U.S. 690, 45 S.Ct. 510, 69 L.Ed. 1159; McCahan v. Commissioner of Internal Revenue, 35 B.T.A. 943.

[9] Citing Baltzell v. Mitchell, 1 Cir., 3 F.2d 428, certiorari denied, 268 U.S. 690, 45 S.Ct. 510, 69 L.Ed. 1159.