### JONES v. WHITTINGTON.

No. 4376.

United States Court of Appeals Tenth Circuit.

Feb. 20, 1952.

---

Maurice P. Wolk, Washington, D. C. (Ellis N. Slack, Acting Asst. Atty. Gen., Robert N. Anderson and A. Barr Comstock, Sp. Assts. to Atty. Gen., and Robert E. Shelton, U. S. Atty., Oklahoma City, Okl., on the brief), for appellant.

Bruce McClelland, Oklahoma City, Okl. (Louie G. Kneeland, Robert O. Bailey, Bruce McClelland, Jr., Oklahoma City, Okl., on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

The question in this case involves the income tax liability of appellee, Florence C. Whittington, for the year 1941. She filed her income tax return for that year and paid the income tax due thereon. Thereafter, on June 30, 1944, she filed a claim for refund on account of overpayment of taxes for 1941, in the amount of $3,283.42. The claim was disallowed and this suit was instituted in the United States District Court for the Western District of Oklahoma, 96 F.Supp. 967, to recover that amount. The trial court made findings of fact and conclusions of law and, based thereon, entered judgment for her as prayed for and this appeal followed.

The controversy arose out of the following facts. Emily Culbertson, a resident of Texas, died testate on April 12, 1941, possessed of a considerable estate, in which were included German bonds of various municipalities and corporations of the par value of $122,075 and of an aggregate appraised value at the time of her death of $19,382.50. The will of Emily Culbertson, so far as material, devised all her property of which she died seized and possessed to her three children, John J. Culbertson, Emily Culbertson Potter, and Florence Culbertson Whittington, share and share alike. It contained the usual provisions, providing for the appointment of an executor, directed him to pay the debts, carry out the provisions of the will, and administer the estate thereunder according to law.

Apparently the estate was not closed until 1944. It would also appear that there was no division or distribution of assets, or any part thereof, until in 1944, and, until that time, the entire estate, including these bonds, remained in the possession of the executor. The stipulation of facts recites that the legatees agreed to a division of the German bonds in 1944 and that on or about April 30, 1944, appellee received her share of such bonds, being the same bonds upon which her claim for refund of taxes for 1941 was predicated. It is without dispute that during the part of 1941 remaining after his appointment the entire assets of the estate were in the exclusive possession and control of the executor and were being administered by him in the discharge of his duties as the executor of the estate.

These German bonds became worthless on December 8, 1941, when we declared war against Germany [1] and thereafter had no value. The executor filed an income tax return on behalf of the deceased for 1941 to the date of her death and filed a fiduciary income tax return, as executor of the estate, for the remaining portion of the year 1941 after his appointment. He did not claim in his fiduciary return a capital loss deduction, because of the loss of value in these bonds. Neither did appellee in her original 1941 income tax return claim a capital loss deduction, because of these bonds. When subsequent to 1941 the executor's fiduciary return was audited, the collector allowed as a capital loss deduction the loss in value of these bonds and, since such loss more than equalled the amount of tax paid under the return, the amount of such tax was refunded.

Under the Federal income tax laws, all income, including capital gain, must be reported in the year in which it is received and likewise a capital loss must be taken in the year in which it occurs.[2] This capital loss occurred in 1941, after the executor was appointed and was engaged in the administration of the estate. The only question is whether he must report the loss, which occurred in that year and during the administration of the estate, in his fiduciary income tax return, or whether the heirs must report it in their individual income tax returns, notwithstanding that they had not received the property, had no dominion or control over it, and did not have the right to receive income, if any, realized therefrom. The trial court concluded that the answer to the question must be determined by the law of Texas and the provisions of the will. In reaching its conclusions, it relied largely upon Blinn v. McDonald, 92 Tex. 604, 50 S.W. 931, Smith v. Patton, Tex.Com.App., 241 S.W. 109, Meadows v. Russell, Tex.Civ.App., 203 S.W.2d 647,

---

1. 26 U.S.C.A. § 127.

2. 26 U.S.C.A. § 41, et seq.

Arrott v. Heiner, 3 Cir., 92 F.2d 773 and Anderson v. Wilson, 289 U.S. 20, 53 S.Ct. 417, 77 L.Ed. 1004.

█ The Texas cases relied on by the court are not helpful because in none of them was involved the question of income tax liability of an estate or the duty of an executor or administrator with regard to income tax returns. It is conceded that under Texas law the title to both personal and real property descends upon death and vests immediately in the heirs, legatees and devisees. All that was involved and decided in the Texas cases, relied upon by the court, was the question whether a creditor of an heir might levy execution upon his undistributed and undivided interest in the estate, during the period of administration. The Arrott and Anderson cases will be treated in subsequent portions of the opinion.

█ It has been held without exception that, while the status of property with respect to its ownership or the nature of an estate of one claiming an interest therein is determined by state law, the Federal tax liability with respect thereto is determined by Federal law and that for tax purposes the Federal Government may give such property a different status than it has under state law.[3] Having determined the status or ownership of property by state law, we then look to the Federal law to determine the manner in which it is to be taxed and who is responsible for filing income tax returns and the payment of taxes with respect thereto at any particular time.

26 U.S.C.A. § 161 (a) (3), so far as it applies to estates in the process of administration, provides that the taxes imposed by the chapter upon individuals shall apply to "income received by estates of deceased persons during the period of administration or settlement of the estate". Subsection (b) provides that "The tax shall be computed upon the *net income* of the estate * * * and shall be paid by the fiduciary". 26 U.S.C.A. § 162 provides that "The *net income* of the estate * * * shall be computed in the same manner and on the same basis

as in the case of an individual, except that * * * (c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate * * * there shall be allowed as an additional deduction in computing the *net income* of the estate * * * the amount of the income of the estate * * * for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the *net income* of the legatee, heir, or beneficiary". 26 U.S.C.A. § 142 (a) provides that every fiduciary "shall make under oath a return * * * stating specifically the items of gross income thereof and the deductions and credits allowed * * *." Subsection (c) provides that "Any fiduciary required to make a return shall be subject to all the provisions of law which apply to individuals."

The regulations promulgated under the tax laws are consistent with its provisions. Thus Section 19.161–1 likewise provides that "Taxes imposed upon individuals by the chapter shall be applicable to the income of estates * * * The rate of tax, the statutory provisions respecting gross income, and with certain exceptions, the deductions and credits allowed to individuals apply also to estates * * *" Subsection (b) provides that the fiduciary (the executor or administrator in the case of estates) "is required to make and file a return and pay the tax on the *net income* * * *" Section 19.162–1 provides that in ascertaining the tax liability of the estate "there is deductible from the gross income, subject to exceptions, *the same deductions which are allowed to individual taxpayers.*" Subsection (2) in part provides that "There is taxable to the estate * * all income of the estate or trust for its taxable year which is not to be distributed currently to legatees or other beneficiaries * * * In all such cases, the tax is payable *by the fiduciary* * * *."

---

3. Morgan v. Commissioner, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 535; Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; Heiner v. Mellon, 304 U.S. 271, 58 S.Ct. 926, 82 L.Ed. 1337; Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119; McCoy v. Commissioner of Internal Revenue, 10 Cir., 192 F.2d 486.

Throughout all the statutory provisions as well as the regulations runs the mandate that it is the duty of the executor during the period of administration to make a tax return for the estate in which he must report all gross income received and take all proper deductions, as in the case of individuals, so that the net income of the estate may be ascertained, upon which it is then his duty as executor to pay the tax.

█ The statutes make it clear that for income tax purposes income of an estate during the period of administration is disassociated from the ownership of property from which it is derived. This becomes manifest from a consideration of Section 162 (c), just outlined. Subsection (c) makes it clear that a legatee or heir may or must report only such income as he has actually received from the estate or with which he has been credited. This is also clear from Section 19.162–1 of the regulations, which provides that "there is taxable to the estate * * * *all income* * * * which is not to be distributed currently to legatees or other beneficiaries * * *."

█ Net income, for income tax purposes, may be defined in substance as the difference between gross or total income and the permissible statutory deductions which may be taken therefrom.[4] Capital gain is income and must be reported. A capital loss suffered is a permissible deduction and must be taken in the year in which it occurs. To require the executor to return capital gain income and not require him to take a capital loss deduction would result in a distorted, unrealistic and unjust tax return. Such a return would not comply with the statutory and regulatory mandate that an executor report the net income of the estate coming into his possession as executor and that the net income of the estate be computed in the same manner and on the same basis as in the case of an individual.

Neither the collectors nor the taxpayers have pursued a consistent course with respect to this question. The tax collectors have in some cases contended that the estate must account for capital gains and take deductions for capital losses and, in others, that the legatee or heir must do so. So also taxpayers in some cases have contended that it was the duty of the executor to report capital gains and deduct capital losses and, in others, that this was the right and duty of the legatee or heir. But in every case in which the precise question has arisen both the tax court and the lower federal courts have held without exception that, during the period of administration, the executor or administrator must report capital gain and deduct capital losses. And this was the ruling involving executor's returns in such states as Texas, where title to property descends directly and vests immediately in the heir upon death.[5]

If the right to take a capital loss deduction occurring during the period of administration belongs to the heir in whom the title to the property is vested under state law, then perforce he must also return in his individual income tax return income realized therefrom, because income and deductions go hand in hand. Such a holding would in states like Texas nullify the Federal statutory mandate that executors and administrators must file estate income tax returns, reporting all income, taking all proper deductions and paying the tax due, as in the case of individuals, because the title to all property of the estate and in their possession as executors or administrators, whether personal or real, vests in the heirs, legatees and devisees.

Notwithstanding the Texas law placing the title to all property immediately in those entitled to receive it, the Federal Government has power to treat the estate as a separate entity, during the period of administration, for income tax purposes, ir-

4. 26 U.S.C.A. § 21.

5. See Baltzell v. Casey, D.C., 1 F.2d 29, reviewed by the Circuit Court in Baltzell v. Mitchell, 1 Cir., 3 F.2d 428; Kuldell v. Commissioner, 5 Cir., 69 F.2d 739; Barbour v. Commissioner, 5 Cir., 89 F.

2d 474; County Nat. Bank and Trust Co. v. Helvering, 74 App.D.C. 142, 122 F.2d 29, 141 A.L.R. 1048; (This is the only case involving a capital loss); Estate of Zellerbach, 9 T.C. 89; Estate of Cohen, 8 T.C. 784.

respective of where the legal title of the property might be [6] and this we think is the effect of the Federal income tax law.

Under Texas law, during the period of administration, the decedent's estate in the hands of the executor or administrator constitutes a trust estate. The executor or administrator is more than a stake-holder, or the mere agent as a donee of a naked power of the heirs, legatees and devisees. He has exclusive possession and control of the entire estate. He is charged with active and positive duties. He is an active trustee of a trust estate. In Morrell v. Hamlett, Tex.Civ.App., 24 S.W.2d 531, 534, in defining the nature of an estate of an executor or administrator, the Texas Court said: "Upon the issuance of letters testamentary upon any such estate, the executor or administrator shall have the right to possession of the estate as it existed at the death of the testator with the exception aforesaid (the exception relating to the homestead), and that he shall recover possession of and hold such estate in trust, to be disposed of in accordance with law." And again, "The nature of their possession taken in pursuance of the authority conferred by said article is defined by the terms thereof and declared to be in trust, to be disposed of in accordance with law. The fiduciary character of an executor's holding is generally recognized."

We conclude that under the Federal income tax laws the estate of a decedent, during the statutory period of administration, is to be treated as a trust estate, having a separate existence, charged with duties of making its own tax return under the hand of the executor or administrator, reporting all income received, and taking all allowable deductions, including capital gains and capital losses occurring during the period of administration.

Neither Arrott v. Heiner nor Anderson v. Wilson, supra, are in conflict with these views. In the Arrott case the testator died December 29, 1902. His will divided his estate into six equal parts. Two of these were placed in trust for two of his children. The remaining four parts were separately devised to four sons. The will provided that the general settlement of the residuary estate should not be made until January 1, 1910. During that time the executors had the full management and control of the estate, with power to sell the real estate. The will provided " * * * while I do not positively direct, I most strongly urge and advise my said executors not to sell or dispose of the property * * * on which the Arrott Building is erected for (blank) years after my decease * * *." The estate had been fully administered and all legacies were paid prior to 1910 and substantially all residuary property was distributed prior to 1924, except the Arrott Power Building and the Arrott Office Building. These were sold at a loss in 1925 and 1926. The question in the case was whether the executors must take the loss or whether the owners of one of the four interests bequeathed to the four sons could claim in his individual income tax return the proportionate loss suffered. The answer depended upon whether the will worked an equitable conversion or whether the executors, who at that time were acting as trustees, were the mere donees of a naked power in selling the property. The court concluded that under Pennsylvania law a mere power of sale, without positive direction to sell, did not work an equitable conversion and that the executors were acting merely as the agents of a residuary legatee and that the loss belonged to him.

In Anderson v. Wilson, supra, Wilson died in 1910. His will directed the executors to sell and convert into personalty his entire residuary estate and to divide the proceeds, as directed. The will pointed out that the residuary estate consisted largely of real estate and shares in business corporations, "which should not be sold excepting under favorable conditions." It laid upon the executors the command "to

6. In Anderson v. Wilson, supra [289 U.S. 20, 53 S.Ct. 420], the Supreme Court in speaking of trusts as tax entities says: " * * * the law has seen fit to deal with this abstraction for income tax purposes as a separate existence, making its own return under the hand of the fiduciary and claiming and receiving its own appropriate deductions."

hold and manage such remaining portion of my residuary estate until in their judgment it can from time to time be advantageously sold and disposed of, not exceeding, however * * *." The executors were further authorized to organize a corporation to convey to it the residuary estate "until in their judgment it can be advantageously * * * disposed of". The building from which a capital loss resulted was not sold until 1922, twelve years after the death of the testator, and the tax liability in question was for the year 1922. The Supreme Court concluded that the will worked an equitable conversion and that the ownership and title to the property was in the executors, as trustees, notwithstanding that the will did not convey the title to them. The Supreme Court was careful to point out that "Our ruling will be kept within the limits of the case before us."

Neither Arrott v. Heiner nor Anderson v. Wilson, supra, involved the duty of an executor or administrator with respect to income tax returns during the statutory period of administration. As pointed out in each case, the question of tax liability arose, not with respect to an act by the executor enjoined upon him by law as executor of the estate, but under the powers of the will in addition to the ordinary and regular duties of an executor. The question in each case dealt with the exercise of a power while the executor was acting as trustee and was, as pointed out, whether he was acting as a trustee of a trust estate, or was merely exercising a naked power as a donee.

Had the will in this case conferred powers upon the executor, in addition to the usual powers and duties of an executor, and to be exercised after the statutory period for probation had expired and requiring him thereafter to sell the property and divide the proceeds and had a capital loss occurred while exercising those additional powers, we would have the factual situation in the Arrott and Anderson cases and a different question would be presented, but such is not the case before us.

The judgment is accordingly reversed and the cause is remanded with directions to enter judgment for the appellant.

PICKETT, Circuit Judge (dissenting).

The conclusions reached by Judge Huxman in his opinion appear logical and the result reached will ordinarily bring about a satisfactory and uniform result in the taxation of the income to estates where losses are actually incurred in the handling of the affairs of an estate. Considering the facts presented in the case before us now, it seems to me, however, that the question is closed by Anderson v. Wilson, 289 U.S. 20, 53 S.Ct. 417, 77 L.Ed 1004. There the last will and testament of the testator left certain of his property to the executors to be disposed of by them at such time as they should determine was advantageous and to distribute the proceeds to certain devisees. Among the assets received by the executors was some real estate which was sold by them at a loss. The question presented was whether the loss should be taken by the executors or by the devisee taxpayer. Mr. Justice Cardozo stated the issues to be: "The government contends, and so the courts below have held, that title to the realty was given to the executors upon a valid trust to sell and to apply the rents and profits in the interval. The representatives of the taxpayer contend that the executors had no title, but only a power in trust, and that subject to the execution of that power, the taxpayer was owner. If that be so, the loss was his and no one else's." The court held that under New York law, title to the property was in the executors and that the taxpayer under the terms of the will was not entitled to receive the property but only an interest in the fund created by the sale. Consequently the taxpayer, not being the owner of the property, suffered no loss.

It is conceded that under the Texas law, title to the bonds in question here was in the beneficiaries named in the will upon the death of the testator subject to administration. Under Texas law and the terms of the will, the beneficiaries were entitled to receive the bonds in kind and not the proceeds from their sale. The taxpayer did receive his share in kind. They were distributed to him with a depreciated value occuring while he was the owner. As I understand the Anderson decision, it was

predicated solely upon the question of who owned the property and the ordinary or extraordinary duty of the executor under the terms of the will was not a factor.

For these reasons I would affirm the judgment.